(No. 14209.—Reversed and remanded.)

WILLIAM DICKMAN, Appellant, *vs.* THE MADISON COUNTY
LIGHT AND POWER COMPANY *et al.* Appellees.

*Opinion filed October 21, 1922.*

1. EJECTMENT—*when question of demand for possession is not involved.* In an action of ejectment brought by the alleged owner of the fee against a power company for entering upon a right of way which had been condemned by a traction company for railroad purposes and which was used by the power company under an arrangement with the traction company, the question of demand for possession before bringing suit cannot be involved, as a demand is unnecessary if the taking of possession by the power company under the agreement is illegal, while if the agreement is legal it is not an encroachment upon the fee and no action of ejectment can be maintained.

2. SAME—*pleas to jurisdiction were only special pleas allowed at common law.* At common law, in an action of ejectment no special pleas were permissible except pleas to the jurisdiction, and the plaintiff was required to prove a demand for possession whenever such a demand was necessary to maintain the suit.

3. SAME—*when demand for possession is not necessary.* Where the entry by the defendant was wrongful in its inception no demand for possession is required to maintain ejectment either under the common law or under the Ejectment act.

4. SAME—*what special pleas are permissible under Ejectment act.* Under the Ejectment act the only special pleas allowed the defendant are that he is not in possession, or does not claim title or interest in the premises, or that no demand for possession was made by the plaintiff.

5. SAME—*special plea alleging no demand was made need not have conclusion.* In an action of ejectment the only purpose of a special plea alleging that no demand was made is to place the burden on the plaintiff of proving a demand, as the Ejectment act provides that the plaintiff shall not be required to prove a demand unless the defendant shall deny that demand was made, and it is not necessary that the plea conclude with a verification or even to the country, but a mere denial is sufficient and no replication is necessary.

6. SAME—*plaintiff may recover although he is not the owner of entire fee—variance.* Under section 12 of the Ejectment act the plaintiff may recover whatever part, share or interest he is entitled

to as shown on the trial although the declaration claims a fee in the entire premises, and his recovery will not be defeated on the ground of a variance.

7. SAME—*when owner of fee may maintain ejectment for entry on public easement of railroad company.* The owner of the fee of land subjected to the public easement of a railroad company may maintain an action of trespass or ejectment against any other person whose entry or acts upon the premises would support the action, unless such person can justify under the authority of the railroad company having the easement.

8. SAME—*equitable estoppel does not apply where a defendant corporation wrongfully withholds premises.* Where a corporation has wrongfully taken possession of the land of another without his consent and without condemnation and wrongfully withholds the same for its use the owner may maintain ejectment or an action to recover the value of the land where the Statute of Limitations has not run against the plaintiff, and the doctrine of equitable estoppel does not apply in such case.

9. SAME—*right of owner of fee to maintain ejectment against power company entering on public easement of traction company.* Where a traction company, which by condemnation has acquired an easement for a right of way for railroad purposes, disposes of its excess power to a power company, which uses the right of way to convey the excess power, the owner of the fee may maintain ejectment against the power company if the arrangement so made is permanent but not if it is in good faith only a temporary disposition of the excess power of the traction company, which will be necessary for the future operation of its traction business.

10. DEEDS—*distinction between a reservation and an exception.* An exception in a deed withholds from its operation some part or parcel of the thing which but for the exception would pass by the general description to the grantee, while a reservation is the creation of some new right issuing out of the thing granted and which did not exist before as an independent right, in behalf of the grantor and not of a stranger.

11. RAILROADS—*when traction company may create and sell excess power.* A traction company has the right to provide for the future growth of its business and to erect and maintain a power plant of sufficient capacity to generate electricity to provide sufficient power for all of its railroad purposes that may be required by the future enlargement of its railroad business, and it may sell its excess power not needed for immediate use to industries along its line or sell such excess power to a power company, to be by it distributed and sold on its own account to other industries.

APPEAL from the Circuit Court of Madison county; the Hon. LOUIS BERNREUTER, Judge, presiding.

J. F. EECK, for appellant.

TERRY, GUELTIG & POWELL, (BURTON & HAMILTON, of counsel,) for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

William Dickman, appellant, brought suit in ejectment in the circuit court of Madison county against the Madison County Light and Power Company and the St. Louis, Springfield and Peoria Railroad, (hereinafter called the Traction Company,) charging by his declaration that a strip of land 75 feet wide, the center line of which runs across the north half of the southwest quarter of section 29, township 4, north, range 8, west of the third principal meridian, in said county, is claimed by him in fee, which is occupied and used by the Traction Company for its right of way, for railroad purposes, and that the Madison County Light and Power Company entered onto said premises and now unlawfully withholds the same from plaintiff. Two other counts were filed by appellant. Appellees filed the general issue and one special plea, in which plea it is alleged, in substance, that no demand for possession had been made by plaintiff before the suit was brought, and to which a general and special demurrer was sustained by the court. Appellees stood by their special plea. By agreement the trial was before the court without a jury, in which the court rendered judgment against appellant.

In 1905 the strip of land in question was condemned for railroad purposes by the St. Louis and Northeastern Railway Company. By *mesne* conveyances its rights therein were obtained by the Traction Company in 1910. The Traction Company operates its system by electricity. At the time the land was condemned for railroad right of way it

was owned by William and John T. Dickman and Elizabeth Schleuter, brothers and sister, as tenants in common, who inherited it from their mother, Mary A. Dickman. On September 4, 1915, John F. Dickman and wife and Elizabeth Schleuter and husband by quit-claim deed conveyed their interests to appellant in the land through which the right of way runs, "excepting the right of way over the same of the St. Louis and Northeastern railway." Since 1915 appellant has been the owner of the land on each side of the right of way, and has been in possession and the owner of an undivided one-third of the right of way strip in fee since it was condemned, subject to the possession of the Traction Company as and for a railroad right of way. The parties to this suit claim from a common source of title, Mary A. Dickman, and appellant filed an affidavit of such common source of title.

According to the showing in the record, the Traction Company, the first two or three years it operated its line over the strip of land in question, outgrew two power houses that it built to generate electricity to operate its road,—one at Riverton and the other at Edwardsville. It then became necessary for it to decide on the building of a new power plant. It also appears that at the same time it became necessary that the Madison County Light and Power Company enlarge its distribution system for furnishing electricity to various industries. The Traction Company decided to locate its third power plant at Venice, on account of the water to be obtained from the Mississippi river. An arrangement was entered into between appellees by which the power company should pay a portion of the fixed charges of the Venice power plant and that the Traction Company should sell to the power company excess current to be generated by the new plant, because this plan would enable the power company to obtain power cheaper for distribution to its customers and at the same time would enable the Traction Company to operate its railroad more economically.

The electricity used for operating the Traction Company's cars is furnished from its generating plant at Venice, and the electricity so used is carried by three high-tension wires along its right of way, carrying 33,000 volts and a 25-cycle current. Before being used for operating cars this 25-cycle current is reduced from 33,000 volts to 370 volts and from an alternating to a direct current of 600 volts. This change is made before the current leaves the generating station. In 1912 the Traction Company erected on its poles and cross-arms on its right of way three additional high-tension wires, carrying electricity of 33,000 volts and a 60-cycle alternating current, which is generated by the Traction Company by the same machinery and plant at Venice that generates the 25-cycle alternating current for the operation of its cars, and the 60-cycle alternating current is measured at the plant and sold to the power company and by the power company is distributed over these wires to its customers at Edwardsville, Riverton, Wood River, East Alton, Hamel and other places along the Traction Company's right of way. The customers of the power company use the electricity so sold them for light, heat and power. The current thus carried over the three wires is changed before it leaves the plant at Venice by frequency-changers from 25-cycles to 60-cycles. After it leaves the plant there is no equipment by which the current can be reduced to that required for operating the interurban cars. The Traction Company also purchases some of this current from the power company for lighting its stations, but by far the greater part of it is sold to private persons. The testimony in the record is to the effect that the power company owns the three high-tension wires over which it receives its current from the Traction Company, and that the Traction Company erected these wires and maintains them. The power plant at Venice produces for the Traction Company and for the power company an excess current of about fifty per cent more than is used for the operation of the interurban cars and other

uses of the road, and when producing this excess current the plant is much more efficient and less expensive to operate. There is some evidence in the record to the effect that the 60-cycle current of the power company may be used as an emergency supply for the railway in case there should be a break or interruption of the wires carrying the 25-cycle current for the operation of its cars, but the evidence does not show that such an emergency has ever arisen or such use employed by the Traction Company. There is also evidence in the record to the effect that the freight carried by the Traction Company on its line amounted to very little in the early years of the operation of its railroad but that the carrying of freight has enormously increased in the last few years, until at the time of the trial the company was operating in and out of St. Louis and the tri-cities, freight trains of from ten to twenty cars daily, thus showing that there may sometime in the future arise a necessity for more power or electricity than it is at present using, and even the entire power generated at the plant. The changing of the 60-cycle current on the wires of the power company for use in operating the Traction Company's cars would necessitate the cutting off of a considerable part of the power from the customers of the power company even when used temporarily by the Traction Company, and if such use were permanent it would appear that it might eventually take all of such power from said customers. The record does not disclose the agreement or the terms made between the power company and the Traction Company with reference to any future use of the power company's current by the Traction Company and whether the same be temporary or permanent, and the character or terms of that agreement are not more definitely given than we have already stated. There is also evidence in the record to the effect that it is much more economical for the Traction Company and the power company to have the arrangement by which the excess power generated by the power plant at Venice may be sold to the

power plant and distributed as aforesaid, and that the public is better served thereby by both companies; that it is reasonably necessary for the Traction Company to generate such excess current and power for its possible needs in the future; that it is customary for other similar railroads to thus provide for their future wants and to sell their excess power until the emergency arises for its future use by the railroads themselves.

The contention of appellant is that the construction and use of the power company's wires for general commercial purposes are an additional burden on the fee, which was not warranted by the judgment and order for condemnation of the strip for railroad right of way, and he therefore has a right to oust the power company by his suit in ejectment.

The first question raised by the parties is upon the court's ruling on the demurrer to appellees' special plea. The special cause of demurrer assigned by appellant is that the plea concluded to the country but should have concluded with a verification. He also contends that a demand in an ejectment suit is not necessary where there is no privity between the parties with respect to the premises sought to be recovered. In other words, where the parties, respectively, claim under independent hostile titles, the law of notice to quit or demand of possession has no application. This latter contention is supported by the cases of *Harland* v. *Eastman,* 119 Ill. 22, and *Mapes* v. *Vandalia Railroad Co.* 238 id. 142. But this rule has no application to the question whether or not the demurrer was properly sustained by the court. The real question whether or not a demand was necessary in this suit depends upon whether or not the Traction Company had a right to erect and maintain the three high-tension wires for the power company and to generate and sell to it and convey to it its excess power for the purposes aforesaid. If the power company's contract and servitude were illegal and not authorized it was a mere trespasser and could be treated as such by appellant,

and no demand for possession in such case would be necessary. On the other hand, if the Traction Company was authorized to confer upon the power company the rights and privileges it claims, the question of demand would cut no figure, as appellant in such case could not maintain ejectment, whether demand for possession was made or not.

At common law, in an action of ejectment no special pleas were permissible except pleas to the jurisdiction, and the plaintiff in an ejectment suit was required to prove a demand for possession whenever such a demand was necessary to maintain the suit. (1 Chitty's Pleading, *546.) Where the entry by the defendant was wrongful in its inception, as claimed by appellant in this case, no demand whatever was required to maintain the suit,—and that is the law now under our Ejectment act. (*Holston* v. *Needles,* 115 Ill. 461.) Under section 22 of the Ejectment act it is provided that it shall not be necessary for the plaintiff to prove that the defendant was in possession of the premises or claimed title or interest therein at the time of bringing the suit, or that the plaintiff demanded the possession of the premises, unless the defendant denies that he was in possession or claims title or interest therein, or that demand of possession was made, by special pleas, verified by affidavit. The foregoing are the only special pleas that are permissible under the Ejectment act. (*Sheldon* v. *VanVleck,* 106 Ill. 45.) The special plea of appellees, verified, simply had the effect of broadening the proof required by plaintiff under said section of our statute. Without such a plea plaintiff would not have been required to prove a demand for possession even if the facts showed that such a demand was necessary.

It will be noticed that the above section simply provides that the plaintiff shall not be required to prove a demand unless the defendant shall deny that demand of possession was made, by special plea, etc. The court apparently sustained the demurrer to appellees' plea on the ground that it

concluded to the country instead of concluding with a verification. This was error, because if the plea should have either conclusion it should be to the country. But we do not think that either of such conclusions is necessary to such a plea, and that a mere denial is sufficient. Its only purpose is to place the burden of proving demand, where necessary, as at common law. It is clear, however, that the plea can serve no useful purpose in this case under the facts proved on the trial, as already stated. It amounts, therefore, to a mere error in passing upon the proper form of such plea. The conclusion to the country was in nowise improper, as the burden of proof on that plea should not, in any event, fall upon the defendant. No replication was necessary to such plea, it being simply the purpose of the plea to cast the common law burden on the plaintiff of proving demand if demand was necessary. Whether a demand is necessary in any ejectment case under such a plea can not usually be determined from the plea and the declaration under our ordinary form of declaration in ejectment. The demurrer was improperly sustained by the court.

It is insisted by appellees that appellant only owns a one-third interest in fee as tenant in common with his brother and sister, and that he cannot recover in this suit because of a variance between the declaration, in which the full title in fee is claimed, and the proof, as pointed out on the trial by appellees. Appellant took no title by his deed from his brother and sister to the right of way of the Traction Company. That deed was to all the tract of land across which the right of way runs, except the right of way itself and another strip conveyed to the railroad company. Including the exceptions, the original tract so conveyed contained 64 acres. Only 60 acres of land was conveyed to appellant by his deed. After describing the land conveyed the deed contained this language: "Excepting the right of way over the same, * * * also excepting a tract of land conveyed to the St. Louis and Northeastern railway, November

21, 1905, * * * containing, after said exceptions, sixty (60) acres, more or less." The deed clearly discloses that only about four acres of the original tract are excepted or not conveyed, and these exceptions are the right of way (which the evidence shows contains 2.69 acres) and a small tract conveyed to the railroad company in 1905, which contains about 1.50 acres. An exception in a deed withholds from its operation some part or parcel of the thing which but for the exception would pass by the general description to the grantee. A reservation is the creation of some new right issuing out of the thing granted, and which did not exist before as an independent right, in behalf of the grantor and not of a stranger. (*Gould* v. *Howe,* 131 Ill. 490.) Had the grantors in appellant's deed intended to convey the entire tract of 64 acres to him, subject to the easement of the Traction Company in the right of way, and excepting the 1.50 acres conveyed to the railroad company in 1905, as contended by appellant, such language would undoubtedly have been used in the deed, or its equivalent. But appellees' contention in this regard cannot be maintained, as the variance pointed out by them is of no consequence in this suit. Under section 12 of the Ejectment act the plaintiff in ejectment may recover whatever part, share or interest he is entitled to, as shown upon the trial, under a declaration claiming a fee in the entire premises described. *Almond* v. *Bonnell,* 76 Ill. 536; *Whitham* v. *Ellsworth,* 259 id. 243.

The contention of the appellees that although the power company's servitude is an additional burden upon the fee to the land composing the right of way and for which appellant is entitled to additional compensation, he should be remitted to an action for damages and cannot maintain ejectment, is not tenable. Their argument is that ejectment can not be maintained because appellant had no right of possession as against the Traction Company. He has the right of possession as against the power company if it is a fact that that company acquired no legal right from the Traction

Company as against appellant. The Traction Company has a valid easement in the right of way, and for all legitimate purposes for which it was incorporated and authorized to use the land in question it has possession of the right of way and is entitled to such possession for such use, but this is no impediment to a recovery against the power company. The judgment in such case should be rendered subject to such valid easement as the Traction Company actually has. The owner of the fee of land subjected to the public easement of a railroad company may maintain an action of trespass or an action of ejectment against any other person whose entry or acts upon the premises would support the action, unless such person can justify under the authority of the railroad company having the easement. *Proprietors on Merrimac River* v. *N. & L. R. R. Co.* 6 Am. Rep. 181; 19 Corpus Juris, 1042.

Equally untenable is the claim of appellees that appellant cannot maintain ejectment but must be remitted to an action for damages, if he can maintain any suit at all, because he knowingly permitted the use of the right of way of which he now complains for a considerable time without bringing any action to prevent it. Where a corporation has wrongfully taken possession of the land of another without his consent and without condemnation and wrongfully holds the same for its use, the owner has two remedies: an action of ejectment or an action to recover the value of the land taken. (*Smith* v. *Chicago, Alton and St. Louis Railroad Co.* 67 Ill. 191; *Chicago and Alton Railroad Co.* v. *Smith,* 78 id. 96.) The doctrine of equitable estoppel asserted by appellees does not apply in this case. The Statute of Limitations has not run against appellant, and it is not so contended by appellees. Whether or not appellant could maintain a suit for injunction against the wrongful action of the power company is not involved in this suit. The suit is purely one at law, and the law must prevail.

The real question in the case is whether or not the Traction Company had the legal right to erect and maintain the three electric wires in question and to generate, sell and transmit over the wires the excess power to the power company for its use as aforesaid. Under the authorities it can not be questioned that the Traction Company had the right to provide for the future growth of its business and to erect and maintain a power plant of sufficient capacity to generate electricity to provide sufficient power for all of its railroad purposes that might be required by the future enlargement of its railroad business, and to sell its excess power not needed for immediate use to industries along its line, or to sell to the power company such excess power, to be by it distributed and sold on its own account to such industries. (*People* v. *Pullman Car Co.* 175 Ill. 125.) The rule is that such a railroad corporation has a right to build all structures of the nature now in question that are reasonably necessary to transact its business and to enable it to accomplish the purposes of its creation. Such a corporation is expected at all times to equip itself to handle and provide for not only its present business requirements but for any reasonably probable increase in growth in the future, and if it acts reasonably and in good faith with the intention of making provision for such reasonable growth it is at least within its implied powers, which are no less lawful than those expressly authorized by its charter. It was reasonably necessary for the Traction Company, in the first place, to equip its plant and to generate excess power to care for the future growth of its business, and if it acted on that necessity in good faith it had the right to erect the wires in question and to make an arrangement with the power company to purchase, temporarily, such excess power for distribution to private customers. The fact that the electricity is delivered to the power company as a 60-cycle current, which cannot be at present used by the Traction Company for its business without changing the character of the current, is not

304—31

of itself sufficient to condemn such arrangement with the power company as illegal. Such fact and the other facts are to be considered, however, in determining the good faith of the Traction Company, and the question is whether or not the wires were erected in good faith with a view to be used by it in the future in its business as a railroad company after making the proper change in the current, or whether such construction was solely for the use of the power company in the pursuit of a different business from that conducted by the railroad company and for the profit of both companies. If the wires were constructed with the latter motive their construction was illegal and wrongful, but if for the former reason their construction was legal and the appellant cannot recover in this suit. *Hodges* v. *Western Union Tel. Co.* 133 N. C. 225; *American Tel. Co.* v. *Smith,* 71 Md. 535.

In the decision of this question it is immaterial whether the public is benefited, or otherwise, by the present arrangement. It is also immaterial whether or not the use of the power company's wires as now constructed in anywise affects the use or enjoyment of his adjoining land by appellant, and evidence along these lines was inadmissible. This is so because if the structures are within the scope of the original easement, for which compensation has already been paid, they are legal, no matter how they affect appellant or the public, and if they are not within the scope of the original easement they are illegal and an additional burden on the fee. If the record were in a condition that the judgment could be affirmed, we might assume that the trial court did not consider the incompetent evidence, as the trial was without a jury. It is not possible, under the evidence, to determine whether the contract of the Traction Company with the power company is permanent or temporary,—that is to say, to determine whether or not the Traction Company is bound to indefinitely furnish power to the power company for distribution to its customers, or temporarily and for

such time, only, as such power will not be required for the use of the Traction Company. If it is bound indefinitely and without restriction to furnish the excess power to the power company and cannot itself use any of such excess power for railroad purposes, that fact would go a long way to settle the question of the legality of the contract. The contract and its terms are peculiarly within the knowledge of appellees, and it is up to them to show the terms of the contract and that the same is legal. It is legal if the excess power was provided for in good faith by the Traction Company for its future requirements as a railroad company, provided a further showing is made that such excess power is reasonably necessary for its future use, and that it has a contract with the power company for only temporary sale of such excess power and may itself use the same when its future growth in business or other causes may make it necessary to employ such excess power in the business for which it is incorporated.

There are other reasons why the judgment cannot be affirmed in this case. The court held a number of propositions submitted by the appellees as the law applicable to the case which cannot be sustained. The seventh proposition of appellees is to the effect that they having filed a sworn plea denying that plaintiff demanded the possession of the property in question, and there being no proof introduced or offered by plaintiff in this record showing such demand, he is not entitled to recover in this proceeding and judgment should be in appellees' favor. We have already discussed this question. The plea was already disposed of by demurrer, as already stated. Demand of possession would have been necessary in no event if the possession by the power company was illegal from its inception or became so after its entry. If such possession was at all times legal as against appellant there could be no recovery, with or without demand.

Appellees' propositions 22, 23 and 24 were also erroneously held by the court as the law. They all amount, in substance, to the same proposition, which is to the effect that as it appears from the evidence that the defendant the Madison County Light and Power Company is a public service corporation, engaged in furnishing light and power to the public over wires used by it on the right of way in question, and plaintiff knowingly permitted the construction and completion thereof without bringing an action to prevent it until after the public service began, he cannot at this time require the removal of said wires from the right of way and cannot recover in ejectment against the said defendant. The holding of these propositions was error for the reasons already stated and necessitates a reversal of the judgment.

The judgment of the circuit court is reversed and the cause is remanded.            *Reversed and remanded.*