Matthias, J.
 

 The claim of The Toledo Edison Company that it is the owner in fee of the premises in controversy is based upon an instrument designated ‘£ Contract for Right of Way,” executed on March 8, 1901, by Harriet Hammond, which instrument (omitting acknowledgment) is 'as follows:
 

 ££ CONTRACT FOR RIGHT OF WAY
 

 “This agreement made this 8th day of March, A. D., 1901, between Harriet Hammond, party of the first part, and The Sandusky & Interurban Electric Railway Company, party of the second part, witnesseth:
 

 “That said Harriet Hammond, party of the first part, in consideration of the benefits to be derived from the construction and operation of an interurban electric railway between Sandusky, Norwalk and Lo-rain, and to facilitate such enterprise, and the further consideration of two hundred dollars, cash in hand, the receipt of which is hereby acknowledged, does for herself and her heirs and assigns hereby give and grant to the second party, The Sandusky & Interurban Electric Railway Company, its successors and assigns, the following described premises, to be used as a perpetual right of way for railroad purposes only, to wit: Situ
 
 *502
 
 ated in the village of Berlin Heights, county of Erie, and state of Ohio, and known as:
 

 “A
 
 part of lot six, range seven, Berlin Heights, Ohio, and bounded and described as follows: It being an extension of the right of way of the Sandusky and Interurban R. R. Co.; commencing at the north side of said part of lot 6, range 7, where it intersects said line with the line as located and purchased of John W. Hamer; thence running southerly until it intersects with the line located and purchased of C. Kaufman; thence west along the lot line of said Kaufman and the grantor forty feet; thence north parallel with said right of way to the south line of said lands of John Hamer; thence east to the place of beginning, containing 24/100 of an acre.
 

 “To have and to hold said premises for railroad purposes only, together with all rights and appurtenances thereunto belonging unto said, The Sandusky & Interurban Electric Railway Company, and its successors and assigns, perpetually, so long as the same shall be used for railroad purposes. Provided that, in case the same shall cease to be used for railroad purposes for a continuous period of two years, said lands shall revert to said Harriet Hammond her heirs or assigns.
 

 “It is a further consideration herefor that said electric railway company shall build and maintain a wire fence upon the both side [sic] of said strip of land, and shall furnish one suitable and safe crossing, with approaches thereto (and two gates), and maintain the same, at such point as said Harriet Hammond shall designate at the time said railroad is built.
 

 “In case said electric railway company, party of the second part, shall fail to construct and complete said proposed railway (as to one track thereof), over said premises, and have the same in operation on or before March 1, 1902, after date, or shall fail to perform the
 
 *503
 
 aforesaid requirements, then these presents shall be void.
 

 “In witness whereof, I hereunto set my hand, the day and year first above written.
 

 “Harriet Hammond
 

 “Signed and delivered in presence of ,“E. B. Austin
 

 ■ “Newton Andress”
 

 Soon after the execution of the above instrument, an interurban electric railway was constructed on the premises therein described which was continuously operated until May 1938 when operation thereof ceased. In February 1938, by order of court, an instrument called a “Deed and Bill of Sale” was executed by a special master, conveying to The Toledo Edison Company “all the, right, title and interest of The Lake Shore Electric Railway Company * * * [the successor of The Sandusky & Interurban Electric Railway Company] in and to the following described property, to wit: * * *
 

 “2. A private right of way, being a strip of land varying in width from 30 feet to 60 feet, and extending from the northerly corporation line of the village of Berlin Heights, Ohio, southerly through said village to the southerly corporation limits thereof, a distance of approximately 1.10 miles, the same having been acquired by The Lake Shore Electric Railway Company and The Sandusky
 
 &
 
 Interurban Electric Railway Company under the following instruments or conveyances of record as more particularly described therein, to-wit:
 

 “24. Contract for right of way with Harriet Hammond, dated March 8, 1901, recorded in Volume 72, Page 508, Erie County Deed Records.”
 

 Soon after the construction of the interurban railroad, poles and wires were erected and thereafter maintained on such premises for the transmission of
 
 *504
 
 electric energy supplied to consumers, and such poles and wires have ever since been so maintained and used by The Toledo Edison Company, the electric current therefrom being distributed by The Ohio Public Service Company.
 

 In 1908 Harriet Hammond executed a deed conveying the property described in the petition to Emerson Andrews and Sarah M.' Andrews. That deed contained a provision “excepting therefrom the right of way of the Lake Shore Electric Railroad.” Thereafter, the entire title to the premises described in the petition, “excepting therefrom the right of way of the Lake Shore Electric Railroad,” was duly acquired by Sarah M. Andrews.
 

 The primary question presented for consideration and decision is the nature and effect of the instrument denominated “Contract for Right of Way.” It is the contention of The Toledo Edison Company, the successor of The Sandusky
 
 &
 
 Interurban Electric Railway Company, that such instrument conveyed a fee simple title subject to a condition subsequent. Such contention is based upon the view that the grantor conveyed definitely described real estate and not a “right of way”- or an easement over the property, and that the title conveyed was not “cut down” by the statement of the purpose for which the premises were to be used. Cases may be found almost without number involving some phase of the question here presented. In the introductory notes prefacing the annotation on the subject, “Deed to Railroad Company as'Conveying Pee or Easement,” in 132 A. L. R., 143, it is said: “A consideration of the cases included herein discloses that although they seem at first glance to present a number of conflicting views, they follow a broad but well-defined pattern, with relatively few exceptions.” It is then stated that “the great majority of the cases are concerned with the construction of deeds containing two
 
 *505
 
 principal forms of granting clauses: (1) those that grant ‘land’ * * * and (2) those that grant a ‘right’ (that is, contain language purporting to convey to the grantee a right of way, or other right or privilege with respect to using the property, over land owned by the grantor). There are a few cases involving deeds containing granting clauses which appear to grant both a designated strip or parcel of land and a right of way, or deeds the granting clauses of which are so obscure as to make it impossible to say that they refer either to ‘land’ or to a ‘right’ * *
 

 An examination of the numerous cases cited warrants the conclusion that, nothing further appearing than that the granting clause of a particular deed refers to “land,” a fee is thereby_ conveyed; and that on the other hand, where the granting clause refers only to a “right,” such instrument conveys only an easement. It is stated in the editorial note referred to that “in numerous instances the court will depend upon other considerations than the fact that the granting clause refers to ‘land’ in reaching the conclusion that the deed conveys a fee, and conversely, in numerous instances other factors than the consideration that the granting clause refers to a ‘right’ are relied upon as the showing that the deed conveys a mere easement.”
 

 When we come to make a careful examination of the instrument involved in this case we observe the peculiarity of the phraseology employed and remind ourselves that the instrument was prepared by the grantee and by it submitted to the grantor for her signature. It is worthy of comment that the instrument is nowhere designated a warranty deed or a quit-claim deed, or otherwise designated as an instrument of conveyance. In capitals, and. in bold type, at the head thereof, it is designated “CONTRACT FOR RIGHT OF WAY.” It was thus proclaimed by the party seeking the signature of the owner of the premises that
 
 *506
 
 the instrument was a “contract” and that the subject matter involved therein was a “right of way.” The granting clause is “does for herself and her heirs and assigns hereby give and grant to the second party, The Sandusky & Interurban Electric Railway Company, its successors and assigns, the following described premises,
 
 to be used as a perpetual right of way for railroad purposes only.”
 
 (Italics ours.) It is to be observed that the restrictions and limitation prescribed precede the description of the land and also that- the following language is included in the description of the land: “It being an extension of the right of way of The Sandusky and Interurban R. R. Co.”
 

 This is not an instrument where a clause restricting .and limiting the use of the premises described is contained only in the habendum clause. It is a part of the granting clause, and such restricted use is further emphasized by the additional language later in the instrument, “to have and to hold said premises for railroad purposes only, together with all rights and appurtenances thereunto belonging * * *, so long as the same shall be used for railroad purposes. Provided that, in case the same shall cease to be used for railroad purposes for a continuous period of two years, said lands shall revert to Harriet Hammond her heirs or assigns,” and also by the provision declaring the instrument void if the proposed railway (as to one track thereof) over the premises is not completed and in operation on or before March 1, 1902.
 

 The rule is well stated in 4 Tiffany on Real Property (3 Ed.), 65, Section 980, as follows: “The habendum and subsequent covenants may modify, limit and explain the grant, but they cannot defeat it when it is expressed in clear and unambiguous language.” If, however, the language of the granting clause in the instrument before us is ambiguous, its intent, purpose and effect is made clear by the subsequent language in
 
 *507
 
 the instrument. In our view, however, the various provisions are entirely consistent and manifest a clear purpose and intent to convey only an easement. If it be conceded that the instrument under consideration is ambiguous in its terms, it is well settled that any doubt as to its construction should be resolved adversely to the party who prepared it.
 

 The following statement in 2 Elliot on Railroads (3 Ed.), 616, Section 1153, is pertinent: “Where, as is usually the case, the statute authorizes only an easement or interest in land, and not a fee to be taken by condemnation proceedings, a deed • will not be construed to convey a fee in the absence of a clearly apparent intention to that effect.”
 

 The general rule is that only an easement may be so taken unless the taking of a greater estate is expressly authorized by law. No such authority is expressly conferred by any statutory provision.
 
 Henry
 
 v.
 
 Columbas Depot Co.,
 
 135 Ohio St., 311, 20 N. E (2d), 921, and cases cited.
 

 We deem the decision of this court in the case of
 
 In re Copps Chapel Methodist Episcopal Church,
 
 120 Ohio St., 309, 166 N. E., 218, inapplicable here for the reason that in the conveyance there under consideration the premises granted was “all such right and title as he, the said grantor, has or ought to have in or to the following described land * * The only limitation stated is to be found in the habendum clause which was in substance that the grantor, his heirs and assigns “shall by these presents be excluded and forever barred so long as said lot is held and used for church purposes.”
 

 The real basis for the court’s decision in that case is concisely stated in the opinion of Judge Allen, on page 315, as follows: “Hence, taking the deed by its four corners, it shows that the grantor intended to convey, and did convey, to the grantees all of his es
 
 *508
 
 tate in the land.” It is our view that the “contract for right of way” involved here, taken by its four corners, shows that the grantor intended to convey, and did convey, only an easement — a right of way.
 

 The cases involving questions arising out of the construction of such instruments are in great variety and almost without number, some views therein expressed being difficult of reconciliation. The decision in almost every instance, however, turns upon the language employed. Hence an analysis of the various cases would serve no useful purpose. We direct attention to the case of
 
 Brightwell
 
 v.
 
 International-Great Northern Rd. Co.,
 
 121 Tex., 338, 49 S. W. (2d), 437, 84 A. L. R., 265, annotation and cases cited, and the case of
 
 Sherman
 
 v.
 
 Petroleum Exploration,
 
 280 Ky., 105,132 S. W. (2d), 768, 132 A. L. R., 137, and the cases annotated thereunder. See, also, 51 Corpus Juris, 536, Section 20116 American Jurisprudence, 577, Section 245; 44 American Jurisprudence, 318, Section 103. Substantial support is therein accorded the conclusion we have above indicated. We believe that conclusion to be consonant with what is stated in the opinion in the
 
 Sherman case
 
 to be “the modern and prevalent rule for determining the estate conveyed by a deed,” which rule is “that if the intention of the parties is apparent from an examination of the deed ‘from its four corners,’ it will be given effect regardless of technical rules of construction.”
 

 The further question presented is whether The Toledo Edison Company acquired by prescription an easement for the maintenance of its electric transmission lines over the premises. We find ourselves unable to concur in the conclusion of the Court of Appeals on this branch of the case.
 

 It must be borne in mind that the use of the right of wray in question for the purpose for which it wqs granted did not cease until 1938. The use authorized
 
 *509
 
 up to that time contemplated the erection and máintenance of poles and wires for the transmission of electric energy. There are three poles on the premises, some of the wires, including the trolley and feed wires, having been removed therefrom. The sale of electric energy and transmission thereof to consumers must be regarded as only incidental and, therefore, such use was not adverse but permissive. Such use could not have become adverse until 1938 for until then it would not have appeared hostile or under an adverse claim of right. It not having been made to appear that the transmission and sale of electric current constituted an enlargement or extension of the easement theretofore granted or contrary to the purpose for which it was granted, a claim of title by prescription based upon such use cannot be supported. This court had before it very recently a similar question in the case of
 
 Pierce
 
 v.
 
 Cherry Valley Farms, Inc., ante,
 
 400, ——N. E. (2d),-, which was decided in accordance with the views above expressed. Where a use is permissive in the beginning it can be changed to one which is hostile and adverse only by the most unequivocal conduct on the part of the user, and evidence of adverse possession must be positive and strictly construed against the person claiming a prescriptive right to an easement.
 
 State, ex rel. State Highway Commission,
 
 v.
 
 Union Electric Co. of Missouri,
 
 347 Mo., 690, 148 S. W. (2d), 503;
 
 Dickman
 
 v.
 
 Madison County Light & Power Co.,
 
 304 Ill., 470, 136 N. E., 790, and
 
 Lindokken v
 
 .
 
 Paulson,
 
 224 Wis., 470, 272 N. W., 453, 110 A. L. R., 910, and cases there cited.
 

 A statement by Chief Justice Rosenberry in the case last cited is particularly applicable. It is as follows:
 

 “Here there was no increase in the width of the way. The rights of the defendant were in no way impaired or diminished. Certainly no ‘flag was unfurled’ and no other evidence of hostility given. The entry of the
 
 *510
 
 plaintiff and his predecessor in title being under permit, the use which was made was referable to the permit. It did not become hostile or adverse until the plaintiff brought home to the defendant the fact that he was no longer acting under the permit. Mere user in the accustomed manner did not do that. Upon reason and authority it is held that such use as plaintiff and his predecessor in title made of the way was. permissive and they acquired no rights by user hostile and adverse to those of the defendant.”
 

 It is our conclusion the judgment of the Court of Appeals, insofar as it affirmed the judgment of the Probate Court, should be affirmed and, insofar as it reversed the judgment of the Probate Court, should be reversed and the judgment of the Probate Court affirmed.
 

 Judgment affirmed in part and reversed in part.
 

 Weygandt, C. J., Zimmerman, Bell, Williams, Turner and Hart, JJ., concur.