OPINION
This is an appeal from the judgment of the Mercer County Court of Common Pleas wherein the court awarded Defendant-appellee, Marathon Pipeline Company back rental payments originating from a license agreement between the predecessors of Marathon and the predecessors of Plaintiff-appellant, American Premier Underwriters.
In 1883, William and Mary Wolf issued a deed which did "Grant, Bargain, Sell and Convey, to the * * * Cincinnati, Van Wert and Michigan Railroad Company (Railroad),[1] its heirs, successors, and assigns forever, the following Real Estate * * * being a strip of land sixty-six (66) feet in width," upon which the Railroad Company subsequently laid tracks. The grant was titled "Deed for Right of Way," and the Wolfs continued to own and occupy the land on either side of this strip of land. In 1887, the Wolfs sold their entire tract of land to James Morrow. However, the deed issued to the Morrows did not mention the previous grant to railroad. In 1949, Morrow's successor and wife, Della Morrow, granted a pipeline right of way to the Ohio Oil Company (Ohio Oil) under portions of the Morrow's land which purported to include a right of way beneath the railroad tracks. In 1951, Railroad entered into an agreement with Ohio Oil whereby Railroad "license[d] and permit[ed], but without warranty, [Ohio Oil] to place, maintain and use a twenty-two (22) inch crude oil pipe line upon and across the property and underneath the tracks of [Railroad]."
The agreement also included a clause that required Ohio Oil to refrain from interfering with the proper use, operation, and enjoyment of Railroad. Additional clauses in the agreement stated that Railroad could revoke the agreement by giving Ohio Oil thirty days notice and also that the agreement would automatically terminate if Ohio Oil removed, abandoned or discontinued its operation on the strip of land. Finally, the agreement provided that Ohio Oil would pay Railroad $44.00 annually.[2] In 1959, Ohio Oil transferred its interest in the pipeline to the Marathon Pipeline Company (Marathon).
In the 1970's, Railroad ceased using the strip of land for railroad purposes. Then, in 1983, the tracks were removed from the real estate, and in 1985, Railroad sold the strip of land to Ronald and Karen Piper. However, the deed reflected that Railroad reserved a permanent and perpetual easement in gross for all existing wire and pipe facilities and the fees generated from such licenses and agreements. In 1994, Railroad's interest in the strip of land was transferred to the plaintiff, American Premier Underwriters (APU).
In 1996, Marathon failed to pay APU rents under the license. Consequently, APU sent Marathon written notice revoking and terminating the license and demanded that the pipeline be removed from the premises. Marathon did not comply with APU's demands and APU filed a complaint on September 3, 1996. Marathon counterclaimed asserting that Marathon had improperly paid rents to APU and its predecessors since the removal of the tracks in 1983. As the facts were not in dispute, the parties agreed to certain stipulations and the case was submitted for summary judgment.
In its initial judgment entry, the trial court found that there was no genuine issue of material fact as to the interest that Railroad was granted in 1883 from the Wolfs. As such, the trial court held as a matter of law that the Wolfs granted Railroad an easement. However, the trial court found that there were issues of material fact regarding the parties' rights as to the land and denied summary judgment as to any remaining issues.
In its final judgment entry dated May 23, 2001, the trial court decided that there was a genuine issue of material of fact regarding the interest in the land held by APU and vacated its previous finding that APU possessed an easement in the strip of land. As a result, the trial court decided the entire case on its merits. In doing so, the trial court this time found that the Wolfs conveyed a fee simple to Railroad in the 1883. The trial court then found that the license between Marathon and Railroad/APU was valid only until the tracks were removed in 1983. Additionally, the trial court found that Railroad could not have reserved an easement in gross in the rents from the license when it sold the land to the Pipers in 1985 because the license had previously terminated. Next, the trial court purported to use its powers in equity, to determine that Ohio Oil had acquired an implied easement from the Morrows to cross the strip of land. The court cited the following factors in support of its finding of an implied easement: (1) the easement to Ohio Oil from the Morrows did not exclude the strip, (2) Ohio Oil/Marathon's use of the property for pipeline purposes has been so long and continued as to show that the use was meant to be permanent, (3) the easement is reasonably necessary to the beneficial enjoyment of its easement rights across the land on both side of the strip, and (4) the servitude of the strip to the easement is continuous as distinguished from temporary. Finally, in summarizing, the trial court found that
 When [Ohio Oil], acquired the pipeline easement from Della Morrow in October 1949, it recognized that the pipeline it intended to construct would pass under the railroad track located on what appeared to be an easement owned by plaintiff's predecessors in interest. Since an easement cannot be imposed upon another easement, [Railroad], granted [Ohio Oil], a license to permit the placement of a pipeline under the railroad as evidenced by the license and crossing agreement that was entered into by those parties on November 1, 1951, only two years after [Ohio Oil] acquired this pipeline easement from Della Morrow.
 Since February 1983, when [Railroad/APU] acknowledged that the railroad track had been removed, the purposes of the license agreement have no longer existed, and from that time forward, that license agreement has lacked consideration and become unenforceable.
APU now appeals asserting three assignments of error.
 The trial court erred in concluding that the crossing agreement failed for want of consideration when APU ceased engaging in railroad activities.
 The trial court erred in determining that APU did not appropriately reserve an easement in gross.
 The trial court erred in determining that Marathon was entitled to a refund of rental payments.
Whether a conveyance is a fee or an easement depends on the description of the interest presented within the four corners of the document. SeeHinman v. Barnes (1946), 146 Ohio St. 497, 507-08. The Ohio Supreme Court in Hinman v. Barnes has addressed the issue of whether the language of a grant of land for railroad use is to be considered as describing a fee or an easement stating "[If] the granting clause of a particular deed refers to `land,' a fee is thereby conveyed; and * * * where the granting clause refers only to a `right,' such instrument conveys only an easement." Id. at 498. Moreover, if there are no words of reversion or limitation, the conveyance of an absolute fee is to be presumed. LittleMiami, Inc. v. Wisecup (1984), 13 Ohio App.3d 239 citing In re CoppsChapel Methodist Episcopal Church (1929), 120 Ohio St. 309, 315.
In this case, while the document was titled "Deed for Right of Way" the granting clause used the words" Grant, Bargain, Sell and Convey to the said The Cincinnati, Van Wert and Michigan Railroad Company, its heirs, successors, and assigns forever, the following real estate * * * being a strip of land." This language unambiguously conveys the Wolfs' entire interest in the strip of land. Notwithstanding the title of the deed, the trial court found the interest of the disputed land to be a fee simple. We agree with this determination. See Little Miami, supra (finding that a granting clause conveying all the described real estate with no exceptions to be a fee).
We will now address APU's first assignment of error.
 The trial court erred in concluding that the crossing agreement failed for want of consideration when APU ceased engaging in railroad activities.
While Ohio Oil and Railroad entered into an express crossing agreement in 1951, the trial court ruled that the agreement terminated in 1983. As with a deed of conveyance, a contract that contains "clear and precise terms," is not ambiguous and the trial court is not permitted to refer to evidence outside the contract itself, such as the intent of the parties, when interpreting the contract. Urban v. Spriestersbach (Feb. 28, 1995), Seneca App. No. 13-94-26, unreported, citing Lawler v. Burt
(1857), 7 Ohio St. 340, 350. The crossing agreement between Railroad and Ohio Oil is very clear. The agreement permitted Ohio Oil to place and maintain its pipeline on Railroad's land in exchange for rental payments. Furthermore, the agreement explicitly stated that it would terminate only upon the will of Railroad or in the event that Ohio Oil removed, abandoned or discontinued the uses described in the agreement. Neither of these events had occurred at the time Marathon discontinued paying rent.
While the trial court found that Marathon was no longer required to pay APU rent because after 1983, the crossing agreement failed for want of consideration and was frustrated in purpose, we do not agree.
"Frustration of Purpose" is defined:
 Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event, the nonoccurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary.
 Printing Indus. Assoc. of Northeastern Ohio, Inc. v. Graphics Arts Int'l Union, Local No. 546 (N.D.Ohio. 1984) 584 F. Supp. 990, 999.
However, the doctrine of "frustration of purpose" is not widely accepted in Ohio. Id. See also Mahoning National Bank of Youngstownv. Ohio (May 27, 1976), Franklin App. No. 75AP-532, unreported (finding that frustration of purpose was not a defense to a contract between the State of Ohio and a private party). Yet, even if we were to apply the doctrine, the agreement would continue to have effect, as there was no specific purpose stated within the agreement itself. Specifically, we find it significant that while there is a clause which terminates the crossing agreement upon the Oil Company's abandonment, there is no comparable language terminating the agreement upon Railroad's abandonment of its railroad activities.[3] Furthermore, the crossing agreement cannot fail for want of consideration, as it is basic contract law that consideration may consist of either a benefit to the promisor or a detriment to the promisee. Irmwin v. Lombard Univ. (1897), 56 Ohio St. 9. In this case, Ohio Oil/Marathon derived a benefit by acquiring access across Railroad's land to Railroad's detriment.[4] In sum, the crossing agreement between Ohio Oil/Marathon and Railroad/APU has not failed by frustration of purpose or for want of consideration. As such, APU's first assignment of error is overruled.
APU's final two assignments of error will be discussed together.
 The trial court erred in determining that APU did not appropriately reserve an easement in gross.
 The trial court erred in determining that Marathon was entitled to a refund of rental payments.
As we find that Railroad/APU was entitled to collect rents from Marathon after the tracks were removed from the strip of land, we must now address whether Railroad properly reserved an easement for rents when it sold the strip of land to the Pipers in 1985. An easement may be created by words of exception or reservation by a landowner upon the sale of his land. See HGS Investments, Inc. v. Western Ohio Telephone Co. (May 9, 1984), Paulding App. No. 11-82-9, unreported (this court upholding the reservation of an easement for all existing wire and pipe agreements). Accordingly, the clause in the deed containing the reservation or exception is to be construed in accordance with the intention of the parties. Id.
The trial court found that while Railroad purported to reserve an easement in gross, the reservation was actually appurtenant and therefore could not be severed from the land. An easement appurtenant,
 Exists for the benefit of the owner of some particular land. If the grant is valueless, unless used for the benefits of land necessarily connected with its use and enjoyment, such dependence makes it appurtenant.
 Deshon v. Parker (1974) 49 Ohio App.2d 366, 367.
On the other hand, an easement in gross "is not appurtenant to any estate in land or does not belong to any person by virtue of ownership of estate in other land but is mere personal interest in or right to use land of another * * *." Centel Cable Television Co. of Ohio, Inc. v.Cook (1991), 58 Ohio St.3d 8, fn. 2 quoting Black's Law Dictionary (6 Ed.Rev. 1990) 510. Whether an easement is in gross or appurtenant depends upon the language of the deed, the intention of the parties and the surrounding circumstances at the time the deed was executed. Siferdv. Stambor (1966), 5 Ohio App.2d 79, 85.
In the present case, Railroad/APU argues that an easement in gross was properly reserved when Railroad sold the strip of land to the Pipers. We agree. As the easement reserved by Railroad did not exist for the benefit of any land,[5] but rather existed so that Marathon could continue to use the pipeline and so that Railroad could collect rents, the easement is not appurtenant to the land. Furthermore, the deed clearly explains the reservation and "it cannot be presumed that the [Pipers] intended the exception to be without effect." HGS Investments, supra. Consequently, Railroad properly reserved an easement in gross, and the APU's second assignment of error is sustained. As we have found that the agreement did not fail, Marathon is not owed the return of any rental payments. Accordingly, APU's third assignment of error is also sustained.
Based on the foregoing, the judgment of the trial court is vacated and the matter is remanded for entry of judgment in accordance with this opinion.
Judgment vacated and cause remanded.
HADLEY and WALTERS, JJ., concur.
[1] The interest in this land has had many owners between 1883 and the 1994. However, for clarity, we will refer to the owner as Railroad during this time period.
[2] Marathon paid $120.00 annually during 1974-1991, $300 during 1992-1993, $307.46 in 1994, and $325.68 in 1995. APU billed Oil $333.77 in 1996 and $344.88 in 1997.
[3] While it appears to be the law in Ohio that the abandonment of a railroad easement will revert the property back to the grantor and therefore a crossing agreement might fail in that instance, this analysis would not apply in the present case because Railroad/APU owns the strip of land in fee. See Waldock v. Unknown Heirs of Wagner (June 7, 1991), Erie App. No. E-89-53, unreported, citing Junction R. Company v. Ruggles
(1857), 7 Ohio St. 1 .
[4] We would also note that the trial court purported to use its equity powers to find that because the crossing agreement failed, Ohio Oil/ Marathon would have held an implied easement over Railroad's land. As we have found that the license has not failed, we will not address the validity of this assertion.
[5] An example of a case where a utility would benefit the land occurs in Carman v. Entner (Feb.2, 1994), Montgomery App. No. 13978, unreported. In that case the water and sewer lines were being used by the dominant estate and therefore benefited the estate.