**MALONEY et al., Appellants and Cross–Appellees,**

v.

**PATTERSON et al., Appellees and Cross–Appellants;**
**Hudson Township, Appellee.**

[Cite as *Maloney v. Patterson* (1989), 63 Ohio App.3d 405.]

Court of Appeals of Ohio,
Summit County.

No. 13953.

Decided June 28, 1989.

*Stephen P. Leiby,* for appellants and cross-appellees.

*John M. Dohner,* for appellees and cross-appellants.

*John W. Solomon,* for appellee Hudson Twp.

---

Edward J. Mahoney, Presiding Judge.

This is an appeal from a judgment rendered by the Summit County Court of Common Pleas, finding appellee Hudson Township acquired title by estoppel to a "cul-de-sac" roadway located on appellants' land. We reverse.

### Facts

The trial court made the following findings of fact.

"1. The issues in this case concern the ownership rights of a cul-de-sac roadway in Hudson Township, Summit County, Ohio. The area of dispute lies at the western end of the dedicated township road called Edgar Road or Edgar Drive. The dedicated road services single family residences. In 1971–72 the

fee-simple owners of the cul-de-sac land built a home on the property. The entire area was a part of the Ken–Dale subdivision which had been platted in 1956. At some point between 1956 and 1972 a cul-de-sac was constructed at the western end of the dedicated portion of Edgar. There is no proof of who actually constructed the cul-de-sac and the short portion of road surface that joins it and the western terminus of the dedicated portion of Edgar Drive. It is clear that at least a portion of the graveled surface of this area was in existence or pre-dated the two homes on the cul-de-sac. The actual cul-de-sac itself lies on the land owned by the plaintiffs, the Maloneys, who are the successors in title. Hudson Township is a party to this action and claims ownership of the disputed road surface. It maintains that public use of the cul-de-sac and its own maintenance activities thereon have resulted in the private ownership rights being converted to public ownership. In support of the claim are the defendants Mr. and Mrs. Patterson whose home is adjacent and abutting the cul-de-sac. They own land which jointly abuts both the dedicated portions of Edgar Drive as well as the undedicated cul-de-sac. The original home on this lot had its driveway connected to the cul-de-sac. Initially, no use was made of the Pattersons' ability to gain ingress and egress from their lot onto the dedicated portions of Edgar Drive.

"Later, however, after difficulties with the Maloneys developed, the Pattersons constructed a new driveway that also now adjoins the dedicated portion of Edgar Drive.

"2. The sole issue in this case is whether the Township or the Maloneys have legal title to the cul-de-sac real estate land under some viable legal theory. Obviously, the Pattersons' rights in this case are inextricably linked to the Township's claims.

"3. It is next found that the original Ken–Dale Subdivision plat map which was recorded in 1956 for this land fails to show any turn-around or cul-de-sac concept provision for Edgar Drive, but it does show one was provided for on Topper Drive, which intersects Edgar. Likewise, the County tax maps maintained by the Summit County Engineer do not show a cul-de-sac on Edgar Drive. In April, 1987, the Township Trustees officially claimed title by adverse use for a period in excess of 21 years. They claim public use and their own Township maintenance and repair are a foundation for such a claim. The minutes of their April 14 and April 28, 1987 meetings show that there is no evidence that the Hudson Township Trustees had any evidence presented to them that the public use and their maintenance of the area exceeded 21 years, other than the conclusion recited by the Trustees.

"The actual extended distance sought to be claimed is approximately 133 feet in length, with a 47 foot diameter turn-around, and the adjoining drainage

ditches on either side. Such an area claimed by the Township was more fully described in a survey-prepared map by Greissing & Butterworth made in February, 1987.

"4. It is next found that the Township has caused the disputed cul-de-sac area to be paved with chip-and-seal surface treatment to make it an all-weather road sometime after 1971 when the first home was built adjacent to it. They have maintained it over the years as they have testified and have plowed snow from it over the years. However, the Township has no formal record of maintenance on its roads, especially this one, and it cannot be said that the memory of the retired road superintendent is such that he can with certainty say the improvement pre-dated 1971 or that the treatment, or any other work, was done earlier than that point in time other than rare limited work of uncertain value and date of occurrence.

"5. Evidence is also found that the County of Summit in 1960 accepted the Ken–Dale roads from the original developer, Mr. Kendall, and the estate of Mr. Kendall's father who initiated the project. This included the 700 feet of Edgar Drive. There is no proof it included the current area in dispute.

"6. There is evidence found that the Edgar cul-de-sac has been used by the public at least to the degree that is fully consistent with such a use as a dead-end road in a high-value residential home area roadway since at least 1971. There was from 1971 no indication made that usage of the cul-de-sac as a turn-around area was not made by the public because it perceived that it would be trespassing on private property. People treated this area just as if it were a part of the dedicated portion of Edgar Drive. Likewise, there is no indication that the Maloneys, until recently, objected in any fashion to the use of the cul-de-sac nor did their predecessors in title. The Maloneys were quite familiar with the area as they had just moved from a home up the street on the dedicated portion of Edgar Drive to their current home on the undedicated portion of the road.

"7. The evidence shows that the Pattersons' land was originally owned by the creator of the Ken–Dale subdivision. Mr. and Mrs. Kendall first transferred this land by deed dated May 14, 1971 from William F. Kendall and his wife Betty J. Kendall to Kenneth J. and Marjorie A. Williams. The 'Williams' thereafter conveyed their interest in this land by deed recorded November 7, 1973 to Ronald B. and Linda Sue Kruse. The Kruses conveyed their interest in the land by deed recorded May 28, 1981 to David C. and Lois Ann Patterson, the Plaintiffs. Additional evidence demonstrated the home on the Pattersons' land was built in 1974, which logically would mean the 'Kruses' built the home. Plaintiffs' home was built in 1971. The records also reveal they took title to 1707 Edgar from Kenneth L. and Marjorie A. Williams on

January 12, 1984. They had previously, as indicated, resided on the dedicated portion of Edgar on Lot # 9 which abuts the Patterson property. The tax map shows plaintiffs also owned Lot # 9 from July 20, 1978 to September 4, 1987."

The trial court concluded that Hudson Township could not take title to the cul-de-sac under the legal theories of adverse possession, prescriptive easement or common-law dedication. The trial court, however, quieted title in favor of Hudson Township under the legal theory of estoppel.

This appeal followed.

### Maloneys' Assignments of Error

"1. The trial court erred in that portion of finding of fact # 6 which states:

" '... The Edgar cul-de-sac has been used by the public at least to the degree that it is fully consistent with such a use as a dead-end road in a high-value residential home area roadway since at least 1971 ... people treated this area just as if it were a part of the dedicated portion of Edgar Drive.'

"2. The trial court erred in that portion of conclusion of law # 12 which states:

" '... When the Pattersons [in] 1986 improved the driveway upon the land in question, the Maloneys with full knowledge of the first did not seek to stop them. This was a material improvement on the existing driveway ...'."

### Pattersons' Assignment of Error

"The trial court erred in that portion of conclusion of law # 11, which states:

" '... Here the original owner is not concluded to have intended to dedicate any part of Edgar Drive beyond both limits set out in the 1956 plat map. Likewise, there are no indicates [sic] that either the County or the Township, which was charged with road maintenance on Edgar, ever accepted any dedication through formal acceptance of the land in dispute ...' "

■ The Maloneys and the Pattersons challenge findings of fact made by the trial court. Findings of fact made by the trial court will not be overturned on appeal if supported by some competent, credible evidence. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411–412, 461 N.E.2d 1273, 1276.

Upon review of the record we find that the findings of fact made by the trial court are supported by competent, credible evidence.

Accordingly, the assignments of error are overruled.

Maloneys' Assignment of Error 4

"The trial court erred as a matter of law in granting an easement by estoppel or quiet title to Hudson Township."

The Maloneys argue that the evidence does not support a finding that Hudson Township should have title to the cul-de-sac under the legal theory of equitable estoppel. We agree.

The trial court found that Hudson Township had acquired an easement for a public right of way by estoppel. See *Reed v. Harlan* (C.P.Circa 1860), 2 Ohio Dec.Rep. 553, 557. In Bruce & Ely, The Law of Easements and Licenses in Land (1988), Section 6.01, a summation of the law of easements by estoppel is stated as follows:

"Analysis of the significance of estoppel theory in these contexts is not repeated here. Rather, this section focuses on other instances in which easements by estoppel commonly arise. These situations typically involve some variation or combination of the following sets of circumstances: (1) A landowner represents that an easement exists when it does not or (2) a landowner permits improvement of his property by a person who acts on the mistaken belief that he holds an easement over the landowner's property.

"One claiming an easement by estoppel must establish (1) misrepresentation or fraudulent failure to speak and (2) reasonable detrimental reliance. Claimants alleging misrepresentation not only must prove that the alleged statements were made but also must establish that those statements were actually misrepresentations. Showing reliance presents additional problems. An easement by estoppel claimant cannot rely on an assertion that may be checked easily in the public records or that is contrary to information in the claimant's possession. Moreover, the claimant must change position personally; proof of reliance by third parties does not suffice. Finally, what constitutes reliance depends on the facts and the circumstances of the particular case. Locating improvements on the dominant estate in order to take advantage of the represented easement has been held to satisfy the reliance requirement. Expending money to repair or improve a servient estate also evinces reliance.

"Courts are reluctant to find an easement by estoppel on the basis of 'mere passive acquiescence.' Nonetheless, under certain circumstances, equity imposes an obligation to disclose information regarding the existence or location of an easement. Such a duty may be found when the servient estate owner observes the claimant improving the servient estate, but not usually when the servient estate owner stands by while the claimant improves his own property, the alleged dominant estate. Furthermore, there is authority that an obligation to speak does not arise when a claimant is already in possession of the relevant information." (Footnotes omitted.)

■ At the outset, we note several public policy reasons why circumstances involving alleged easements by estoppel and governmental entities should be construed narrowly against the governmental entity.

First, governmental entities have the alternative of eminent domain to acquire the necessary land for a public right of way. A private person asserting estoppel does not.

Second, when a governmental entity acquires an easement for a public right of way, it is tantamount to the governmental entity acquiring title to the land. In contrast, when a private person acquires an easement by estoppel, it is generally for his own use and it is generally for a limited purpose.

Third, since a governmental entity is chargeable with the knowledge of which streets it owns, we think it would be the rare situation where the governmental entity could be misled or induced to improve a street which it did not own. A possible exception is where a governmental entity improves a street on a withdrawn promise to dedicate a street.

■ In the case before us, we find there is insufficient evidence to support a conclusion that Hudson Township acquired an easement for a public right of way over the cul-de-sac.

Although Hudson Township constructed a chip and seal surface over the cul-de-sac sometime after 1971, the trial court could not make any findings concerning the circumstances surrounding the construction of the chip and seal surface. Accordingly, we do not think that the fact that the chip and seal surface was constructed by Hudson Township cuts either way.

The trial court based its finding in part on the fact the Maloneys permitted Hudson Township to remove snow from the cul-de-sac and otherwise permitted Hudson Township to maintain it. Furthermore, the trial court noted that the Maloneys permitted the public to use the cul-de-sac.

In light of Hudson Township's knowledge of its own highways, we do not think that the Maloneys misled or induced Hudson Township to maintain the road. Furthermore, Hudson Township had no justifiable reason for relying on such misrepresentation or inducement on the part of the Maloneys.

It also should be noted that the Township used the cul-de-sac as a turn-around for its vehicles. It appears that Hudson Township's activities with regard to the cul-de-sac were as much as for its own convenience as they were for the Maloneys' benefit.

Finally, we believe that the Maloneys' conduct in the instant case does not rise beyond passive acquiescence. Compare *Monroe Bowling Lanes v. Woodsfield Livestock Sales* (1969), 17 Ohio App.2d 146, 46 O.O.2d 208, 244

N.E. 762; and *Bavikatty v. Foss* (Dec. 15, 1982), Summit App. No. 10738, unreported, 1982 WL 5181.

Accordingly, the evidence adduced is not legally sufficient to support the conclusion that Hudson Township acquired an easement for a public right of way by estoppel over the cul-de-sac.

■ Hudson Township argues in its brief that we should affirm the trial court's decision under the theory of common-law dedication. However, Hudson Township's argument, by its own admission, is premised on the basis that the trial court erred when it found there was no intent to dedicate the cul-de-sac. For the reasons discussed under the Pattersons' assignment of error, Hudson Township's argument is not well taken.

Accordingly, the Maloneys' fourth assignment of error is sustained.

### Maloneys' Assignment of Error 3

"The trial court's decision quieting title in favor of Hudson Township is an unconstitutional taking of property."

In light of the Maloneys' fourth assignment of error, this assignment of error is non-determinative. However, we will address this assignment of error pursuant to App.R. 12(A).

On the authority of *State, ex rel. A.A.A. Investments, v. Columbus* (1985), 17 Ohio St.3d 151, 17 OBR 353, 478 N.E.2d 773, the Maloneys' third assignment of error is overruled.

### Summary

The Maloneys' fourth assignment of error is sustained and the judgment of the trial court is reversed and vacated. Pursuant to App.R. 12, we order that the title to the cul-de-sac be quieted in favor of the Maloneys.

*Judgment accordingly.*

REECE, J., concurs.

QUILLIN, J., dissents.

QUILLIN, Judge, dissenting.

I would affirm based on a common-law dedication. *Mastera v. Alliance* (1987), 43 Ohio App.3d 120, 539 N.E.2d 1130.