Plaintiff-appellant Donald M. Brandt, Trustee appeals from a summary judgment entered by the trial court in favor of defendants-appellees Ralph H. and Barbara L. Daugstrup on plaintiff's claim to quiet title to an alleged prescriptive easement for an underground sewer line which has existed over the Daugstrup property for at least seventy-two years before suit was brought. Plaintiff claims that the trial court erred in holding that the maintenance of the sewer line was permissive only and that the plaintiff failed to establish the necessary elements of a prescriptive use for more than twenty-one years. We agree with plaintiff, reverse the judgment for defendant below and enter judgment for the plaintiff.
The sewer line in question traverses in an easterly direction four contiguous parcels of land (Parcels 7, 8, 9, 10) leading from Brandt's house to a major sewer line beneath Beach Cliff Blvd. in Rocky River, Ohio.
In 1924, Brandt's predecessor in interest, Cue Huber, constructed a home on Parcel 7 and a permit was issued for construction of the sewer line ("the Huber sewer line") from the Huber home. The line, which exists to the present day, was installed across the southerly portion of the three neighboring Parcels 8, 9 and 10, which are currently owned by the Daugstrups.
Upon Cue Huber's death in 1933, his spouse, Margaret "Daisy" Huber, acquired title to Parcel 7. On June 23, 1982, title passed to Daisy's daughter, Jane Huber Brandt. The plaintiff, Donald Brandt, Trustee, the surviving spouse of Jane Huber Brandt, acquired title on November 6, 1984.
The ownership history of the adjacent parcels is relevant to the outcome of this case. In 1924, Parcel 8 was owned by Alfred Smith (who sold it to Maria Weitz in 1927); Parcel 9 was owned by Clarence Courtney (who sold it to Maria Weitz in 1925); and Parcel 10 was owned by James and Helen Hills (who sold it to Maria Weitz in 1943). Thus, Parcels 8, 9 and 10 were not all owned in common until 1943 when Maria Weitz took title to Parcel 10.
Subsequently, in 1987, parcels 8, 9 and 10 were sold by the Maria Weitz' estate to the Daugstrup defendants. Prior to closing, counsel for plaintiff Brandt wrote letters to Ralph Daugstrup and to the attorney for the Weitz estate noting the existing easement for the Huber sewer, and suggesting that the terms of the easement be formalized. The record does not reveal whether any action was taken in this respect.
In 1956-1957, a dispute over the easement arose as memorialized in an exchange of letters between Leonard Weitz, Maria Weitz' husband, and their architect, "Mr. Walters," and between Leonard Weitz and Daisy Huber, the owner of Parcel 7. These letters are crucial to an understanding of the present dispute.
The first letter, dated November 22, 1956, is from Leonard Weitz to his architect, Walters. This letter followed damage apparently caused by Walters to "the Huber water line north of the sewer" while he was working on the Weitz property during the Weitz' absence. Leonard Weitz' recollection of the original Huber water and sewer lines as "temporary" is described in the November 22nd letter:
Dear Mr. Walters — November 22, 1956
* * *
 I recall now that I gave Mr. Huber permission to run a temporary water line across my property pending the time when a main would be installed on Avalon into which he would make his permanent tap. About the same situation as with the sewer. I did not give him an easement, written or verbal, and neither he nor I ever intended that these temporary things should become permanent.
 I am sorry to inconvenience Mrs. Huber by inadvertently digging up the water line, but I do not intend to let anyone dig across our lot to repair the old one or lay a new one. The principle of "adverse possession" does not obtain in this case.
 Therefore, please stop anyone from doing any such digging, and if necessary get in touch with my son John who will put my attorney, Mr. Wm. Thomas, 440 Leader Bldg., or one of his staff, on the matter of getting an injunction against any such operations, or stopping it by some means. I cannot have my right to sell or build on any part of my property be cluttered up with easements or permanent installations of any kind.
* * *
Best regards, L.E. Weitz
(Ex. 3). (Emphasis in original.)
A week later, on November 29, 1956, Leonard Weitz wrote directly to Daisy Huber, Cue's widow, recounting the history of the easement and suggesting that she relocate the temporary Huber sewer line "elsewhere than across our property."
My Dear Daisy:
 I am very sorry that your water service was interrupted when our contractor accidently ripped up a line on our land which he could not possibly have known was there when he started to work, since there is no record of the route of this temporary installation any place that I know of.
 The point I make at this time, since the matter has come up, is to suggest that preparations now be made to locate your permanent sewer and water lines elsewhere than across our property. You will recall that when Cue was building your present home, the sewer in your street frontage on Avalon was too high as Cue expressed it to properly drain your property and besides there was no water line there. A new sewer for Avalon was then under consideration which when built would be of sufficient depth to drain your property. Cue came to me and asked me for temporary permission to come across intervening properties and connect with the sewer and water on Beach Cliff. As I said, this installation was to be temporary. Cue expressed it that way and we both understood it that way, so on that specific understanding and without any consideration from Cue, I consented as a good friend to letting him run a temporary line across our property for his accommodation. Subsequently, the projected sewer of proper depth, together with water lines, were laid in front of your property on Avalon and have been and are now available to you, and this was again discussed with Cue regarding a permanent installation out to Avalon and the removal of lines from our property, all of which he said he was going to do. The involvement of your lines across our property, long after the purpose has been met, presents as you will see, title difficulties on the future disposition of our land. The fact that, as so frequently happens, time drifted on, without the proposed permanent installations being made, does not change the fact that I would not at that time, and certainly cannot now, give or sell an easement to anyone, nor permit the title to our property to be impaired.
* * *
Yours very truly. L. E. Weitz
(Ex. 4).
Daisy Huber responded by a letter dated December 30, 1956, as follows:
Dear Leonard, December 30, __56
* * *
 First, it was a shock to learn that this was only a temporary arrangement that you had with Cue. He never mentioned it to me. I feel very badly if you feel that it in any way decreased the value of your property. I thought, of course, that our deeds were written so that we could have access to the nearest public utilities.
 Some time ago, you told me you wished to sell a portion of your property. If you still do, I should like to buy it. It would give me a solution to my very grave problem, and could not possibly do you any harm.
* * *
Most sincerely, Daisy Huber
(Ex. 5). (Emphasis in original.)
Leonard Weitz responded by letter dated June 14, 1957, rejecting her offer to purchase and advising that "the solution to your problem * * * lies in some other direction and I cannot urge you too strongly to take early steps to assure yourself of water and sewer service in place of the present temporary lines * * *." (Ex. 6).
Since 1924, Brandt and his predecessors, Cue, Daisy and Jane Huber, have used, and repaired when necessary, the Huber sewer line. On June 17, 1976, the Huber sewer line was cleaned and repaired. The City of Rocky River inspected the sewer on June 21, 1976 and found it "O.K."
Apparently, no further action was taken by the parties until Brandt filed his complaint for declaratory judgment on October 15, 1996, seeking to establish his right to a prescriptive easement in the sewer line. The Daugstrups' answer asserted a quiet title counterclaim claiming that plaintiff's use was permissive only. Because the predecessors in interest were no longer living, to support their contentions, the parties were required to rely primarily on the series of letters written in 1956 and 1957 previously recited and relating to the disputed easement. The parties stipulated to the authenticity and admissibility of these and other letters, as well as facts relating to the chain of title for the various parcels involved, and filed cross-motions for summary judgment as though on an agreed statement of facts.
In its July 21, 1998 journal entry, the trial court denied Brandt's summary judgment motion and granted the Daugstrups' summary judgment motion, concluding: "No prescriptive easement, easement by estoppel or license with interest exists. Plaintiff's use of Defendant's property is permissive only." This timely appeal ensued.
Plaintiff's sole assignment of error states as follows:
 I. THE TRIAL COURT ERRED WHEN IT DENIED PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTED DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.
Appellate review of summary judgments is de novo. Grafton v.Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105; Zemcik v. La PineTruck Sales Equipment (1998), 124 Ohio App.3d 581, 585. This means "we review the judgment independently and without deference to the trial court's determination." Brown v. CountyCommissioners off Scioto County, (1993), 87 Ohio App.3d 704, 711. The Ohio Supreme Court recently restated the appropriate test inZivich v. Mentor Soccer Club (1998), 82 Ohio St.3d 367, 369-70 as follows:
 Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274.
Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E).Mootispaw v. Eckstein (1996), 76 Ohio St.3d 383, 385. Doubts must be resolved in favor of the nonmoving party. Murphy v.Reynoldsburg (1992), 65 Ohio St.3d 356, 358-59.
An easement is defined as "an interest in the land of another which entitles the owner of the easement to a limited use of the land in which the interest exists." Colburn v. Maynard (1996),111 Ohio App.3d 246, 253; Wray v. Wymer (1991), 77 Ohio App.3d 122,130, citing Szaraz v. Consolidated R.R. Corp. (1983),10 Ohio App.3d 89. In Ohio, the general rule is that an easement may be created by an express or implied grant, prescription, or implication which may arise from the particular set of facts and circumstances. Campbell v. Great Miami Aerie (1984), 15 Ohio St.3d 79,80. Furthermore, in certain situations, Ohio courts have recognized the equitable remedy of estoppel for the creation of easements. Kamenar R.R. Salvage, Inc. v. Ohio Edison Co.
(1989), 79 Ohio App.3d 685; Maloney v. Patterson (1989), 63 Ohio App.3d 405; Monroe Bowling Lanes v. Woodsfield Livestock Sales
(1969), 17 Ohio App.2d 146.
In the instant case, plaintiff asserts in his brief that he has an interest in the Huber sewer line under the theories of easement by estoppel and prescription. The trial court granted summary judgment in favor of the defendants, finding that no prescriptive easement or easement by estoppel exists. We find that summary judgment was appropriately granted regarding the existence of an easement by estoppel and inappropriately granted regarding the non-existence of a prescriptive easement.
A party seeking to claim an easement by estoppel must establish: (1) misrepresentation or fraudulent failure to speak, and (2) reasonable detrimental reliance. Maloney, supra, at 410. In Monroe Bowling Lanes, supra, at paragraph two of the syllabus, the court described an easement by estoppel as:
 Where an owner of land, without objection, permits another to expend money in reliance upon a supposed easement, when in justice and equity the former ought to have disclaimed his conflicting rights, he is estopped to deny the easement.
It is the party claiming the easement by estoppel who must demonstrate that he was misled or was caused to change position to his prejudice. Id. at 149.
In the instant case, it is undisputed that Leonard Weitz gave Cue Huber permission to run a temporary sewer line across his property. However, no assertion has been made and no evidence has been presented of any misrepresentation or "fraudulent failure to speak" by Weitz upon which Cue Huber detrimentally relied. Accordingly, plaintiff has failed to establish an easement by estoppel and summary judgment was properly granted in favor of defendants on this issue.
However, after a careful review of the record, we further find that the trial court erred in granting summary judgment in favor of defendants by holding Brandt failed to prove a prescriptive easement. We hold that plaintiff was entitled to summary judgment as the evidence established that the temporary permission expired and Daisy's use of the sewer line after 1933, and certainly after 1956, satisfied the requisite elements of a prescriptive easement.
The recent case of Katz v. Metro. Sewer Dist. (1997), 117 Ohio App.3d 584,589-90, adopted the legal definitions for an easement by prescription from Hudall v. Martinez (1990), 69 Ohio App.3d 580, stating as follows:
 "To obtain a prescriptive easement, a landowner using [another's] property must prove by clear and convincing evidence that such use was (a) open, (b) notorious, (c) adverse to the [other's] property rights, (d) continuous, and (e) in place for at least twenty-one years. J.F. Gioia, Inc. v. Cardinal American Corp. (1985), 23 Ohio App.3d 33, 37, 23 OBR 76, 80-81, 491 N.E.2d 325, 330-331. See, also, Butcher v. Katterjohn (June 23, 1987), Hardin App. No. 6-85-14, unreported, 1987 WL 13485; McInnish v. Sibit (1953), 114 Ohio App. 490, 19 O.O.2d 476, 183 N.E.2d 237.
The parties do not dispute that the use of the Huber sewer line was in fact, open, notorious, continuous and in place for over twenty-one years. Indeed, the 1956-57 correspondence recounting the history of the easement makes it clear that the Weitz' knew full well of the existence and nature of the line over their property. The critical issue in this case is whether or not the Hubers' use was adverse or continued to be permissive only after 1933 for the next forty-five years.
The proofs essential to an easement by prescription were set forth in Pavey v. Vance (1897), 56 Ohio St. 162, syllabus, as follows:
 1. Where one uses a way over the land of another without permission as a way incident to his own land and continues to do so with the knowledge of the owner, such use is, of itself adverse, and evidence of a claim of right. And where the owner of the servient estate claims that the use was permissive, he has the burden of showing it.
 2. When one who is the owner of a tract of land uses a way over the land of another for the convenience of egress and regress to his own land, without let or hindrance and without obstruction for the period of twenty-one years he thereby, in the absence of anything to the contrary, acquires a right by prescription to its use as an incident to his land; and the right will pass by a conveyance or descent of the land.
As noted in Pavey, whenever a servient landowner confronts a claim for a prescriptive easement, the landowner may assert the defense of permissive use. The burden of proof dichotomy between adverse and permissive use has been harmonized in the recent cases as most recently explained in Shell Oil Company v. DeValCompany (Sept. 24, 1999), Hamilton Co. App. Nos. C980783/980809, unreported at 14-15, as follows:
 Consequently, in order to establish a prescriptive easement, the burden is on the claimant to demonstrate all the elements not simply by a preponderance of the evidence, but by clear and convincing evidence. Id.
 This rule is subject to one caveat: the Ohio Supreme Court has held that where a claimant makes a prima facie showing of a prescriptive easement, the burden shifts to the landowner to show that the use was permissive. Pavey v. Vance (1897), 56 Ohio St. 162, 46 N.E. 898, paragraph one of the syllabus. This does not mean, however, that the ultimate burden of persuasion is shifted. As observed in Crawford:
 Modern Ohio cases have variously characterized the burden of proof concerning adversity. [Citations omitted.] The only way to harmonize these cases is to recognize the majority rule that evidence of continued use of another's property for the period of prescription generally gives rise to a rebuttable presumption of adversity. This shifts the burden of going forward to the defendant to present some evidence of permissive use. The ultimate burden of persuasion rests with the claimant. [Citation omitted.]
In the instant case, it is undisputed that Leonard Weitz gave Cue Huber temporary permission to run the sewer line across his[1] land to Beach Cliff Blvd. in 1924. However, around 1956-1957, a dispute arose regarding this easement following damage done to the adjacent water line by Weitz' architect. On November 29, 1956, Weitz wrote a letter to Daisy Huber advising her of the origin of the temporary permission and suggesting that she relocate the line "elsewhere than across our property." Subsequently, on June 14, 1957, Weitz again wrote Daisy advising her that "I cannot urge you too strongly to take early steps to assure yourself of water and sewer service in place of the present temporary lines * * *." The issues then become whether: (1) the permission for the temporary line expired by its terms or was revoked when the Avalon Road sewer line became available in 1933; (2) Daisy's use of the line without knowledge of the permission from 1933 to 1956 was adverse under a claim of right; or (3) whether Weitz' letters to Walters and Daisy constituted a revocation of any prior permission, thereby making Daisy's continued use of the sewer line after 1956 adverse.
"Whether a use is adverse or permissive depends upon the facts of each particular case." Glander v. Mendenhall (1943). 39 Ohio L. Abs. 104. Furthermore, a once permissive use may be changed to one adverse to the landowner. See Hinman v. Barnes (1946),146 Ohio St. 497, paragraph two of the syllabus. Crawford v. Matthews
(Sept. 21, 1998), Scioto App. No. 97CA2555, unreported.
If the permission once granted expires by its terms, or is otherwise revoked, or if a new owner neither seeks nor obtains permission, adversity is triggered. Continuous use thereafter for 21 years creates a prescriptive easement. See Vanasdal v. Brinker
(1985), 27 Ohio App.3d 298 (permission to initial owner did not prevent easement by prescription to second owner, who neither sought nor obtained permission during continuous use of 21 years).
Leonard Weitz' own correspondence leaves no ground for serious dispute. The temporary use of the Huber sewer line was granted to Cue Huber in 1924. Therefore, that use was permissive. However, whether or not the original easement to Cue Huber was permissive in 1924, we find the record is clear and convincing that such permission was revoked in 1956, if not earlier, in 1933. Leonard Weitz' November 29, 1956 letter states that the Huber sewer line to Beach Cliff Blvd. was a "temporary" arrangement, as an accommodation to his neighbor, Cue Huber, but only until such time as the Avalon Drive sewer was built. He further states that he told Cue sometime before Cue's death in 1933 to "remove" the "temporary" sewer and install a "permanent" line out to Avalon Drive:
* * *
 Subsequently, the projected sewer of proper depth, together with water lines, were laid in front of your property on Avalon and have been and are now available to you, and this was again discussed with Cue regarding a permanent installation out to Avalon and the removal of lines from our property, all of which he said he was going to do. The involvement of your lines across our property, long after the purpose has been met, presents as you will see, title difficulties in the future disposition of our land.
* * *
(Ex. 4).
Thus, it appears beyond dispute that the original explicit and temporary permission expired or was revoked when the Avalon sewer became available. And, according to Weitz, both he and Cue Huber "understood it that way." When the Avalon sewer became available in 1933, this "was again discussed with Cue regarding a permanent installation out to Avalon and the removal of lines from our property, all of which he said he was going to do." But, Cue Huber did not remove his "temporary" line from the Weitz' property nor did he install a permanent line out to the Avalon Drive sewer. Thus, the Huber sewer line began to adversely encroach on the Weitz' property at some time prior to Cue's death in 1933 when the Avalon Road sewer became available and the temporary permission came to an end.
Even if Leonard Weitz did give permission to Cue Huber to run a "temporary" line across "his" property, and even if such permission did not expire prior to Cue's death in 1933, that permission was never known to Daisy Huber after she acquired title to Parcel 7 in 1933. In fact, Daisy Huber tells Weitz in her December 30, 1956 letter that: she is "shocked" to hear of the temporary arrangement with Cue; Cue "never mentioned [the arrangement] to me"; she had always used the Huber sewer line with the understanding that there was an easement; and she thought "that our deeds were written so that we could have access to the nearest public utilities." (Ex. 5). This demonstrated a claim of right on Daisy's part, which continued from 1933 to 1956, a twenty-three year period. Even if Daisy was mistaken in her belief, it did not change the nature of her adverse use under a claim of right. Keish v. Russell (Sept. 11, 1996), Athens Co. App. No. 95/CA 1686, unreported. (Use of property under a mistaken belief of ownership is sufficient to constitute a claim of right)
In Vanasdal, supra, the court concluded that plaintiff had established "adversity," notwithstanding defendant's argument that plaintiff's predecessor's possession of the land stemmed from a "familial relationship under which use of the disputed strip was permissive." The plaintiff had maintained a strip of land between his lot and defendant's lot since 1940. He sought to quiet title to the disputed area when a survey showed that the land actually belonged to the defendant. The trial court found for plaintiff, concluding that the permission extended to plaintiff's predecessor was irrelevant, because plaintiff had used the strip for more than twenty-one years:
 The status of the use prior to Vanasdal's taking possession has no bearing here, since the statutory requirement for adverse possession is only twenty-one years, R.C. 2305.04, and Vanasdal has owned the property for more than forty years. Adverse or hostile use is any use inconsistent with the rights of the title owner. Kimball v. Anderson (1932), 125 Ohio St. 241. The hostile use here began as soon as Vanasdal took possession and began using the property as his own.
Vanasdal, supra, 27 Ohio App.3d at 298.
The instant case presents compelling similarities. As noted, Daisy Huber understood from 1933 until 1956 that she had a right to use the Huber sewer for access to the Beach Cliff Blvd. sewer across the Weitz property. Indeed, for more than twenty-one years after her 1933 acquisition of Parcel 7, she used the Huber sewer line under such a claim. Therefore, like the plaintiff in Vanasdal, Daisy Huber's use of the Huber sewer line from 1933 onward was adverse to the Weitz property rights, ripening into a prescriptive easement by 1954.
Even were one to assume that Daisy was occupying the easement by permission (which is clearly and convincingly contradicted by the evidence), that state of affairs changed in 1956 when construction by architect Walters on the Weitz property damaged the Huber water line, interrupting service to the Huber home and raising the easement issue once again. At that time, Leonard Weitz' directions to his architect clearly demonstrated that any permissive use was over. He regarded the Huber sewer and water line as a trespass and cloud on his title. He stressed: "I do not intend to let anyone dig across our lot to repair the old [line] or lay a new one." He ordered his architect to "stop anyone from doing any such digging" and to contact his attorney, if necessary, to obtain "an injunction against any such operations, or stopping it by some means." These dramatic instructions made it clear that Weitz recognized the encroaching nature of the Huber sewer line in 1956 and any permissive use was at an end. It is well stated that circumstances combined to "bring home" to Weitz "clear notice of a conversion from permissive use to a prescriptive right." Shell Oil, supra, at 18-19.
At the same time, he made clear to Daisy Huber in 1956-57 that his temporary permission for the line had expired by 1933 when the Avalon sewer became available and that Daisy must remove the lines and tap into Avalon. Daisy's response, however, was not to remove the lines, but instead, she offered to purchase the property. (Ex. 5). Leonard Weitz rejected the offer to purchase and strongly urged Daisy "to take early steps to assure [herself] of water and sewer service in place of the present temporary lines." (Ex. 6). Daisy's offer to purchase in 1956 does not change the outcome. J.F. Goia, Inc. v. Cardinal American (1985),23 Ohio App.3d 33, 39 ("a user's acknowledgment that the title holder has the paramount right will not extinguish a fully matured prescriptive easement * * * after the prescriptive easement results from prior adverse use, the user does not forfeit the established easement by acting as if it did not exist.")
Notwithstanding Weitz' urging, Daisy continued to use the Huber sewer line. Further, the line was cleaned, repaired, and inspected 19 years later, in 1976, without any action on the part of Weitz or his wife. Daisy's prescriptive right in the easement ripened no later than 1978, more than twenty-one years after the 1956-57 letter exchanges. That right passed to her daughter and later, her son-in-law, long before the Daugstrups acquired the servient estate.
Finally, Weitz' failure to file an action to quiet title within twenty-one years of 1956 bars the Daugstrups' claim. R.C. 2305.04
requires that an action to recover the title to or possession of real estate be brought within twenty-one years after the cause of action accrued. As stated in Crawford, supra at 13:
 Prescription, like adverse possession, is, effectively, a statute of limitations. See 1 Curry 
Durham, Ohio Real Property Law and Practice (5 Ed. 1996) 276, 291, Sections 7-1 and 7-8(a); 2 Ohio Jurisprudence 3d (1998) 431, Adverse Possession, Section 5. `That principle upon which the limitation operates, is, that the adverse claim is accompanied by such an invasion of the rights of the opposite party as to give him a cause of action, which he has failed to prosecute with the time limited by law, and which he is therefore presumed to have surrendered or abandoned." Clark v. Potter (1876), 32 Ohio St. 49, 63-64; See, also, 2 Ohio Jurisprudence 3d (1998) 431, Adverse Possession, Section 5. Whatever appellee's subjective belief, it is evident from the record that appellee's use of appellant's property occurred without appellant's permission and constituted such an invasion of appellant's rights that appellant possessed a cause of action in trespass, which appellant failed to prosecute within the time limited by law, and which he is now presumed to have surrendered or abandoned.
The evidence reflects that Weitz had full knowledge of the Huber sewer line from its installation around 1924. Subsequently, in 1933 to Cue, and in 1956-1957 to Daisy, Weitz expressed his displeasure with the encroaching sewer line and politely invited them to remove the "temporary" line from his property. Thereafter, pursuant to R.C. 2305.04, Weitz had forty-five years (between 1933 and 1978) to file an action in ejectment or to quiet title, but didn't do so — as Weitz expressed it — "time drifted on." A use doesn't become permissive "simply because the property owner does nothing to prevent it out of indifference, laziness, acquiescence, or neighborly accommodation." Shell Oil,supra, at 12. Because no such claim was filed until the Daugstrups' counterclaim on December 10, 1996, their claim to quiet title is time barred as a matter of law.
Based on these facts, we find that Brandt has established by clear and convincing evidence that use of the Huber sewer line was open, notorious and adverse to the Weitz's property rights for a period of more than twenty-one years. Any permissive use terminated at the earliest in 1933 and, at the latest, in 1956. Therefore, the trial court's summary judgment in favor of the Daugstrups on their counterclaim to quiet title will be reversed and judgment will be entered for Brandt as a matter of law.
Plaintiff's sole assignment of error is sustained.
Summary judgment for defendant-appellee is reversed and vacated. Judgment for plaintiff is hereby entered.
It is ordered that appellant recover of appellee his costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
LEO M. SPELLACY, J., and ANNE L. KILBANE, J., CONCUR.
 _____________________________ JAMES M. PORTER ADMINISTRATIVE JUDGE
[1] Brandt argues on appeal (Appellant's Brief at 11) that Leonard Weitz had no permission to give in 1924 because his wife took title to Parcel 8 in 1925, and she did not acquire Parcels 9 and 10 until 1927 and 1943, respectively. Given our disposition of the other issues, it is not necessary to resolve this discrepancy. We presume Leonard Weitz had authority to speak for his wife in giving temporary permission.