DECISION AND JUDGMENT ENTRY
This case is on appeal from the July 7, 2000 judgment of the Erie County Court of Common Pleas, which declared that appellees, Robert and Joyce Hammond, and all owners of lots within the Gasieski subdivision have an express easement, an implied easement, an easement by estoppel, a prescriptive easement, and a license coupled with an interest to use the property at issue. On appeal, appellants, Arthur Gasieski, Edward Gasieski, and Eleanor Wilczewski assert the following assignments of error:
 "ASSIGNMENT OF ERROR NO. 1 "The trial court erred because its conclusions of law are not supported by findings of fact that justify the results set forth in its Judgment Entry of June 30, 2000, that Plaintiffs and all other lot owners in Gasieski Subdivision have a permanent easement of subject private park.
 "ASSIGNMENT OF ERROR NO. 2 "The trial court erred in finding that Plaintiffs met their burden of proof as to the existence of an express easement.
 "ASSIGNMENT OF ERROR NO. 3 "The trial court erred in finding that Plaintiffs met their burden of proof as to the existence of an implied easement.
 "ASSIGNMENT OF ERROR NO. 4 "The trial court erred by finding that Plaintiffs met their burden of proof as of the existence of an easement by prescription and that the Defendants have not met their burden by proving permission was granted.
 "ASSIGNMENT OF ERROR NO. 5 "The trial court erred in finding that Plaintiffs met their burden of proof as to the existence of a license with an interest."
Dan Klonowski, Trustee of the Leonard Gasieski Trust, asserts the following assignments of error:
 "1. The Trial court erred in stating its Findings of Fact, which are insufficient on which to base the Court's Conclusions of Law.
 "2. The Trial Court erred in ruling that Plaintiffs-Appellees have an interest in the parcel denoted as "Private Park" on the plat map of Gasieski Subdivision.
 "A. The evidence was insufficient to support a finding that an express easement existed.
 "B. The evidence was insufficient to support a finding that an implied easement existed.
 "C. The evidence was insufficient to support a finding that an easement by estoppel existed.
 "D. The evidence was insufficient to support a finding that a prescriptive easement existed.
 "E. The evidence was insufficient to support a finding that a license coupled with an interest existed."
Appellees, Robert and Joyce Hammond, initiated this declaratory judgment action seeking to have the court declare that the Gasieski subdivision lot owners have a permanent implied or prescriptive easement to use the property at issue as a private park and quiet title to the property. The property at issue is a parcel located along the shoreline of Lake Erie in the Gasieski subdivision. On the recorded plat of 1955, the parcel is designated as a "Private Park." However, there is no dedicatory language indicating that the park was dedicated to the private use and enjoyment of the subdivision lot owners. None of the deeds by which appellees or other subdivision owners attained title to their lots reference the park. A few of the lots in the subdivision have been sold. The bulk of the subdivision lots are owned by the appellants, the children of the original owner of the property, Walter Gasieski, who created the subdivision. The deed transferring title of the property to appellants includes the park property but does not mention the park specifically.
Jean Kuyoth, a council member of the village of Kelleys Island from 1991 to 1996, testified that she owns property in a neighboring subdivision. She met appellant, Eleanor Wilczewski, in the Summer of 1994 or 1995 when Wilczewski contacted Kuyoth about someone blocking the roadway and preventing access to the park. At that time, Kuyoth asked Wilczewski if Kuyoth could use the park as an abutting neighbor to the subdivision. Kuyoth had been using the park since she first purchased her lot in 1984 and built her house in 1989. This was the first time, however, she had asked permission to use the park. Wilczewski stated that she wanted the general public to have access to the park.
Kuyoth further testified that since 1995 or 1996 subdivision regulations for a major subdivision require that the proposed subdivision provide for a park or pay a waiver fee. Prior to the adoption of these regulations it was a general practice, but not a requirement, to provide for a park.
Joyce Hammond testified that she and her husband, Robert, own Lots 7, 8 and 20, within Block 2 of the Gasieski Subdivision. They acquired the lots from Joyce's father in 1987 and later built a home on one lot. Her father had purchased two of the lots (8 and 20) from Walter Gasieski in 1955, and her uncle had purchased the other lot, which passed to her father on her uncle's death.
Hammond testified that since the early 1950s when she was two or three years old, she has visited Kelly's Island on family vacations. From the time her father purchased two lots until her home was built, she visited the island and the park four to six times a year. When she visited the island, she would use the park to access the water or just sit by the water. There were no signs indicating that it was a private park, and no one told her to leave. She accessed the park either by Dwelle Lane or by going around Walter Gasieski's house on Lot 9 directly in front of the park. Only a small portion of the park was cleared along Dwelle Lane that led to the shoreline of the lake.
Hammond believed that Walter Gasieski had told her father to use the park for access to the lake area, but she was never present during any of these conversations. Neighbors also told them when they bought the property that they had a right to use the park. Others generally referred to the park as the "subdivision's park." Joyce Hammond first saw the plat map in the mid-1970s.
Joyce and Robert Hammond both testified that after they acquired their lots, Robert Hammond posted a sign in 1989 identifying the park as a private park for the subdivision only. He put up the private park sign because he was afraid of liability if anyone got hurt going there. The sign has remained in place since that time. After the Hammonds built a house on their lot, they gave others permission to use the park as well. Otherwise, she did not know of anyone who used the park without first talking to the Gasieski family.
Hammond also testified that her husband questioned Wilczewski about the erosion along the shore, the need to keep the park maintained, and his desire to add a picnic table and benches. Wilczewski indicated that they should help keep up the park and do whatever they had to do. She also told them to call her if anyone interfered with their use of the park. Joyce Hammond admitted on cross-examination, however, that at her deposition she had never mentioned the conversation with Wilczewski when asked who informed her that she had a right to use the park. She had only testified that when they first moved to the island, their neighbors had indicated that they all had a right to use the park as subdivision owners.
In 1997, the Hammonds put up some barrier rocks to prevent erosion. The also put a picnic table and benches in the park. That same year, they also took out some brush, mowed, and dug a ditch and tiled to try to drain the water into the lake. Hammond photographed her husband doing some of this work and the changes they made.
Edward and Arthur Gasieski came to visit the Hammonds in 1997 or 1998 and complained about their children not being able to use the park. Hammond told them that when her father purchased lots, the park came with it. She also told them that their sister, Eleanor Wilczewski, had implied in 1994 that they had a right to use the park as a lot owner in the subdivision.
Edward Gasieski testified that he is a one-quarter owner of the Gasieski property located within the Gasieski subdivision. The family currently retains title to seven of the nine lots in Block 1 and twenty of the twenty-eight lots in Block 2. He purchased the property fifteen or twenty years prior from his father, Walter Gasieski, with his brothers and sister. Edward believed that the deed transferred the park to his siblings and himself without any limitations even though it does not specifically reference the park. His father had purchased the property in 1941 or 1942. In 1955, Walter Gasieski created the Gasieski subdivision. Walter Gasieski had a cottage and a house on Lots 6 and 9 and sold the remaining lots to the general public. In 1985, when the house was still there, Edward's son cut the grass in the park. There was no indication that anyone else was using the property because the grass was tall until after 1994 when the house was removed. Edward only visited the property a few times a year. He and his siblings pay the taxes on the park property.
About one and one-half years ago, while his children were using the property, Edward learned that his children were being harassed by a property owner in the subdivision and someone had bulldozed down some trees in the park, filled in a ditch, barricaded Dwelle Lane at the water by rocks, and created a boat launch. Edward spoke to Robert Hammond in 1998 and another subdivision owner to tell them that they could not use the park. Edward's son had tried to resolve the issue the prior year but had been unsuccessful. Edward told his son to construct a wire fence in the "park" area. Someone else tore it down. Edward testified that there is a sign there now that says "Private Beach, Subdivision Only" that someone else put up.
In the past Edward rarely ever saw anyone use the park area. His father had told him that he did not include the park in the deeds because he wanted to maintain control of the property. His deed from his father does reference a park. Neither he nor his siblings ever gave anyone permission to use the park. He never gave his sister permission to allow anyone to use or improve the park. It was not until after his father's home was removed and someone was making improvements to the park that they had trouble with the use of the park. He tried several measures to keep people out of the park, but someone always removed the barriers. Even owners of lots in a neighboring subdivision along Dwelle Lane claimed a right to use the park.
Arthur Gasieski testified that he visited the property once or twice a year when his father was there and never saw any activity at the park. From 1971 to 1994, he was there almost every weekend and never saw any activity. After 1994, he saw that someone had cut down some big trees, added a picnic bench, and boat ramp. He never gave anyone permission to use the park and never authorized his sister to do so either.
The trial court held that the plat created an express easement to the park because it is clear from the plat that the grantor intended to grant the subdivision lot owners access to the park, a twenty-foot private lane, a thirty-foot private lane, a fifty-foot runway, and three streets (Dwelle Lane, Boeing Drive, and Curtis Drive). The court also found that an implied easement existed in this case; that appellants are estopped from denying the easement because they permitted another to expend money in reliance upon the supposed easement; that appellees acquired an easement by prescription; and that appellees also had a license coupled with an interest.
Appellant, Klonowski, argues in his first assignment of error that the trial court's findings of fact were insufficient to support its conclusions of law. More specifically, he argues that the trial court committed reversible error by failing to set forth sufficient findings of fact as required by Civ.R. 52.
Civ.R. 52 provides that "[w]hen questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise before the entry of judgment * * * in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law." In the case before us, neither party made such a written request.
However, the court's judgment entry in this case is divided into two sections: Findings of Fact and Conclusions of Law. The question arises then whether the court, once it took on the duty of setting forth separate findings of fact, must comply with the mandates of Civ.R. 52 regarding the sufficiency of those findings. We have found only two Ohio cases which have addressed this issue.
This court was recently presented with a case where the trial court ordered the parties to submit findings of fact from which it devised its findings of fact. We held that the trial court did not have to make findings of fact in that case because they were never requested; but, in any event, the sua sponte findings of fact were sufficient for appellate review. Duggan v. The Village of Put-In-Bay (May 4, 2001) Ottawa App. No. OT-00-044, unreported. While we accepted the findings of fact of the trial court, we did not hold that the trial court was obligated to comply with Civ.R. 52.
In Ferguson v. Ferguson (Nov. 8, 2000), Knox App. No. 99-CA-000022, unreported, the appellate court held that a trial court was required to comply with Civ.R. 52 after it granted a party's request for findings of fact even though it was not required to do so. We find this case distinguishable on the basis that the trial court clearly accepted the duty to comply with Civ.R. 52 by granting the party's request. In the case before us, there was no written request or formal indication by the trial court that it intended to make findings of fact.
Therefore, we hold that even though the trial court separated its judgment into two sections for findings of fact and conclusions of law, the judgment was still a general judgment in appellees' favor. Appellant Klonowski's first assignment of error is not well-taken.
Appellants, Arthur Gasieski, Edward Gasieski, and Eleanor Wilczewski, argue in their first assignment of error that the trial court's conclusions of law are unsupported by the evidence and that we must review this case based upon an abuse of discretion standard. We disagree. As will be discussed below, the issues raised in this case involve either issues of law or fact and will be reviewed according to the standards set forth with respect to each issue. This assignment of error is found not well-taken.
Appellants' remaining assignments of error will be addressed simultaneously. Appellants, Arthur Gasieski, Edward Gasieski, and Eleanor Wilczewski, set forth four additional assignments of error addressing the issues of express easement, implied easement, easement by prescription, and license coupled with an interest. Appellant, Dan Klonowski, Trustee, sets forth only a second assignment of error with five subparts addressing these issues as well as easement by estoppel. We will address each issue separately.
The first issue, the existence of an express easement, involves the construction of an instrument of conveyance and is, therefore, a matter of law if the terms of the instrument are clear and unambiguous.Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus.
Appellants argue that the trial court erred by finding that the plat created an express easement for the benefit of the subdivision owners in the park. The trial court first reasoned that the subdivision owners would have an easement by estoppel in the streets in the subdivision (two of which were labeled as "private" drives on the plat) based on common law. The court cited Beechler v. Winkel (1978), 59 Ohio App.2d 65;Krzewinski v. Eaton Homes, Inc. (1958), 108 Ohio App. 175; and Finlaw v.Hunter (1949), 87 Ohio App. 543. Then, the court held that it was clear from the face of the language of the plat that the grantor intended to give the subdivision owners an express easement to use the park just as the private drives were for the benefit of the subdivision. The trial court appears to have made some correlation between the use of the word "private" when referencing roadways (for which the cases cited upheld an easement by estoppel to use an abutting roadway) and the use of the word "private" with reference to the park.
"An easement is a right without profit, created by grant or prescription, which the owner of one estate may exercise in or over the estate of another for the benefit of the former." Yeager v. Tuning
(1908), 79 Ohio St. 121, 124. The express easement must be set forth in the language of the deed, lease, etc. Kamenar Railroad Salvage, Inc. v.Ohio Edison Co. (1992), 79 Ohio App.3d 685, 689. No particular words are required, but the language used must evidence an intent to create an easement. Nedolast v. Frankart (Oct. 20, 1999), Seneca App. No. 13-99-19, unreported. Once created, the easement must appear in the chain of title of the dominant parcel. Pence v. Darst (1989), 62 Ohio App.3d 32,37.
Upon a review of the plat at issue, we conclude that the trial court's finding that an express easement existed in this case is erroneous as a matter of law. There is no language in the plat giving the subdivision owners an express easement to use the park. In fact, the use of the word "private" clearly evidences an intent not to grant an easement to use the park. Even if we determined that the terms of the plat were ambiguous, the only evidence relating to the meaning of the terms is that of Edward Gasieski who testified that his father intended to keep ownership of the park so that he could control its use. Therefore, the trial court's conclusion that Walter Gasieski had a different intention is not supported by the evidence.
Furthermore, Ohio common law regarding a subdivision owner's right to claim an easement by estoppel as to abutting roadways cannot be extended to a non-abutting park area which is not necessary for the use of the subdivision lots.
The second issue raised is whether the trial court erred by finding that there was an implied easement to use the park. The trial court held that appellees had an implied easement to use the park in this case without stating the facts upon which it relied. The court relied uponCiski v. Wentworth (1930), 122 Ohio St. 487, paragraph one of the syllabus and Martin v. Sheehy (1986), 33 Ohio App.3d 332, 334.
Generally, implied easements are not favored at common law because they circumvent the rule that written instruments should speak for themselves. Ciski, supra. However, an implied easement based upon an existing use will be recognized where: "(1) A severance of the unity of ownership in an estate; (2) that before the separation takes place, the use which gives rise to the easement shall have been so long continued and obvious or manifest as to show that it was meant to be permanent; (3) that the easement shall be reasonably necessary to the beneficial enjoyment of the land granted or retained; (4) that the servitude shall be continuous as distinguished from a temporary or occasional use only."Id. The party claiming the easement must also prove that the dominant estate is "`visibly dependent'" upon the easement. Campbell v. GreatMiami Aerie No. 2309, Fraternal Order of Eagles (1984), 15 Ohio St.3d 79,80, citing to Natl. Exchange Bank v. Cunningham (1889), 46 Ohio St. 575, paragraph one of the syllabus. See, also, Clark v. Smith (Aug. 30, 1985), Sandusky App. No. S-84-39, unreported.
In order to find an implied easement existed in this case, the trial court had to have found that the easement use existed prior to the severance of the parcels. We find that there is no evidence to support this element. There is no evidence that anyone used the park as a recreational area before the subdivision was created. Furthermore, there is no evidence to support a finding that full use of the Hammond's property was dependent upon the use of the park. Therefore, we conclude that the trial court erred as a matter of law by finding that an implied easement based upon an existing use had been created in this case.
The third issue is whether the trial court erred by holding that an easement by estoppel existed in this case. The trial court held that appellants permitted appellees to expend money in reliance upon the supposed easement and were, therefore, estopped from denying its existence.
An owner of property may be estopped from asserting his rights if he, knowing his property rights, has made some misrepresentation or fraudulently failed to speak regarding the use of his property and another, not knowing the true state of the title, reasonably relied upon this representation or acquiescence to his detriment. Penn. Co. v. Platt
(1890), 47 Ohio St. 366, 385 and Maloney v. Patterson (1989),63 Ohio App.3d 405, 410. The determination of what constitutes reasonable reliance depends on the circumstances of each particular case. Improvement of the dominant estate to take advantage of the easement and repair or improvement of the servient estate is sufficient. Maloney,supra. However, the party claiming the existence of an equitable estoppel cannot have relied upon a misrepresentation that could have been easily checked in the public records or that is contrary to information he already possessed. Id. and Marshall v. Rahrig (Apr. 24, 1996), Hardin App. No. 6-94-8, unreported.
If the evidence regarding the existence of an equitable estoppel is disputed, its existence must be determined by the trier of fact based upon a clear and convincing evidence standard. Gathagan v. Firestone Tire Rubber Co. (1985), 23 Ohio App.3d 16, 18 and Gnomes Knoll Farm, Inc.v. Aurora Inn Operating Partnership, L.P. (June 30, 1994), Geauga App. Nos. 93-G-1772, 93-G-1780, unreported. Therefore, on appeal, an appellate court will affirm the trial court's findings if there is competent, credible evidence going to all the essential elements of a case. C.E.Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279.
Joyce Hammond testified that she knew that Jean Kuyoth had asked permission to use the park. She and her husband also asked Wilczewski about using the park. They were aware that their deed did not give them any express right to use the park. While Joyce Hammond's father had some agreement with Walter Gasieski to use the park, there was no evidence to prove that this agreement was anything more than permission to use the park. We find that while there is conflicting evidence in this case, the evidence presented by the Hammonds does not rise to the level to meet the clear and convincing standard. There is insufficient proof that the Hammonds were led by Wilczewski's statements to believe that their right to use the park came from purchasing a lot in the subdivision or that they reasonably relied upon her statements to expend significant sums to upgrade the park for the benefit of the general public.
The fourth issue is whether the trial court erred by holding that a prescriptive easement existed in this case.
A prescriptive easement exists if the owner of the dominant estate can prove that he made a specific use of another's land: "(a) openly; (b) notoriously; (c) adversely to the neighbor's property rights; (d) continuously; and (e) for at least twenty-one years." Pence v. Darst
(1989), 62 Ohio App.3d 32, 37. The burden of proving that the use was by permission falls on the owner of the servient estate. Id. at 38. The owner of the dominant estate must prove the existence of the easement by prescription by clear and convincing evidence. Gnomes Knoll Farm, supra. To meet the twenty-one years of use requirement, the owner of the dominant estate may tack prior adverse use if they are in privity with the prior owner and the prior use was sequential and continuous, similar in nature, open, notorious, adverse, and lasted more than twenty-one years. J.F. Gioia, Inc. v. Cardinal Am. Corp. (1985), 23 Ohio App.3d 33,37.
In this case, the Hammonds state that they used the park since they acquired their property in 1987. Joyce Hammond also testified that they used the park since the 1950s. However, there was no evidence that Joyce Hammond's father used the park in the early 1980s. In order to tack prior use, the Hammonds had the burden to show that Joyce Hammond's father, as the prior owner of the dominant estate, used the easement continuously. There was also insufficient evidence that the use of the park was adverse since Joyce Hammond's father had, at the very least, permission from Walter Gasieski to use the park since the 1950s. Therefore, we conclude that there was not clear and convincing evidence to support the trial court's finding of the existence of a prescriptive easement.
The fifth and final issue is whether the trial court erred by holding that appellees had a license coupled with an interest to use the park. The trial court reasoned that the plat evidenced the intent to create an easement even though it lacked the dedicatory language to create an express easement.
A license coupled with an interest arises if the parties intended the agreement to be a permanent right to do an act on the land of the licensor rather than a mere privilege. Cambridge Village CondominiumAssoc. v. Cambridge Condominium Assoc. (2000), 139 Ohio App.3d 328,333-334; and Kamenar Railroad Salvage, Inc. v. Ohio Edison Co. (1992),79 Ohio App.3d 685, 691. The key is whether the parties intended to create a permanent and perpetual right to use the property.
We find that there is no evidence to support the trial court's finding in this case that the parties intended to create a permanent and perpetual right in all subdivision owners to use the park area. There is also insufficient evidence to establish that there was a permanent and perpetual agreement between Joyce Hammond's father and Walter Gasieski that her father and his family could use the park.
Accordingly, we find all of the remaining assignments of error raised by appellants well-taken.
Having found that the trial court committed error prejudicial to appellant, the judgment of the Erie County Court of Common Pleas is reversed. This case is remanded to the trial court for further proceedings consistent with this decision. Pursuant to App.R. 24, appellees are hereby ordered to pay the court costs incurred on appeal.
 ________________________ HANDWORK, J.
 Melvin L. Resnick, J., James R. Sherck, J. CONCUR.