OPINION
{¶ 1} Plaintiffs-appellants, Hal R. Arkes and Sylvia Arkes, appeal from a judgment of the Franklin County Court of Common Pleas granting partial summary judgment in favor of defendant-appellee, Richard A. Gregg, Jr. ("Gregg") on plaintiffs' complaint alleging an easement onto Gregg's property. Finding no genuine issue of material fact regarding the existence of an easement by necessity or by estoppel, we affirm.
 {¶ 2} Plaintiffs and Gregg became next door neighbors in October 2000, after plaintiffs purchased Lot 170, Dennison Place, the property immediately south of Gregg's Lot 169, Dennison Place. The foundation of plaintiffs' house is less than 18 inches from the northern lot line dividing the parties' properties. A privacy fence that Gregg built in 1979 and extended in 2001 rests on the northern lot line. The tight proximity between plaintiffs' house and Gregg's fence severely challenges plaintiffs' ability to perform maintenance and repairs on the north side of their house without accessing Gregg's property. Although access initially was not an issue, since October 2001 Gregg has no longer granted plaintiffs permission to enter his property to facilitate repairs on plaintiffs' home.
 {¶ 3} In 2002, plaintiffs filed a complaint that sought, pursuant to counts one and two, a declaratory judgment determining they have an easement by necessity and an easement by estoppel over Gregg's property for the purposes of maintaining and repairing the north side of their house. In counts three through six, plaintiffs also claimed Gregg was liable for trespass caused by the encroachment of part of his privacy fence, for directing water run-off onto their property, for negligently breaching a duty to maintain his property, and for creating a nuisance. In count seven, plaintiffs prayed for injunctive relief that required Gregg to remove fence encroachments and to cease interfering with their use of the easement, along with unspecified compensatory and punitive damages.
 {¶ 4} Finding no genuine issue of material fact on the issues of easement by necessity, easement by estoppel, nuisance, and injunctive relief regarding the easement, and determining Gregg is entitled to judgment as a matter of law, the trial court granted Gregg's motion for partial summary judgment. Plaintiffs dismissed the remaining counts in order to expedite their appeal. On appeal, plaintiffs assign the following errors:
1. The trial court erred in its finding of fact that Appellants' use of the claimed easement by necessity is merely convenient.
2. The trial court erred as a matter of law by requiring evidence of both prior use and strict necessity to find an easement by necessity.
3. The trial court erred as a matter of law by weighing the circumstantial evidence of intent to convey an easement by necessity against an arbitrary evidentiary standard.
4. The trial court erred as a matter of law by granting the motion for summary judgment on the easement by necessity claim when the motion was not properly supported by factual evidence as required by Rule 56.
5. The trial court erred as a matter of law by deciding that an easement by estoppel may not pass through the chain of title.
6. The trial court erred in its finding of fact that there is no evidence of detrimental reliance on a reasonable belief in ongoing permissive use.
7. The trial court erred as a matter of law in deciding that Appellee had no notice of an easement when he purchased his property.
8. The trial court erred as a matter of law by granting summary judgment on the nuisance claim solely on the basis that an easement was not found.
9. The trial court erred as a matter of law by denying equitable relief after finding there was no legal basis for declaring an easement.
 {¶ 5} An appellate court's review of summary judgment is de novo. Koosv. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588, citingBrown v. Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. We apply the same standard as the trial court and conduct an independent review, without deference to the trial court's determination. Maust v.Bank One Columbus, N.A. (1992), 83 Ohio App.3d 103, 107; Brown, at 711. We affirm the trial court's judgment if any of the grounds the movant raised in the trial court supports the judgment. Coventry Twp. v.Ecker (1995), 101 Ohio App.3d 38, 41-42.
 {¶ 6} Plaintiffs' first seven assignments of error contend the trial court erred in granting summary judgment to Gregg on the issue of whether plaintiffs possess an easement over Gregg's property for the purposes of maintaining and repairing the north side of their house. Plaintiffs do not claim the right of an express easement; rather, they claim an implied easement by necessity or an implied easement by estoppel. In their first, second, third, and fourth assignments of error, plaintiffs contend the trial court erred by not finding an implied easement by necessity. For the ease of discussion, plaintiffs' first four assignments of error will be discussed out of order.
 {¶ 7} Plaintiffs' fourth assignment of error asserts the trial court erred in finding no implied easement by necessity when Gregg's motion was not properly supported by factual evidence as required by Civ.R. 56.
 {¶ 8} Summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the non-moving party. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66. A party seeking summary judgment "bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record * * * which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280, 292.
 {¶ 9} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of affirmatively demonstrating that the non-moving party has no evidence to support the non-moving party's claims. Vahila v. Hall
(1997), 77 Ohio St.3d 421. The moving party discharges its initial burden if the evidence, including pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, show no genuine issue as to any material fact and the moving party's entitlement to judgment as a matter of law. Summary judgment is then appropriate if the non-moving party does not respond with specific facts showing that a genuine issue exists for trial. Dresher, at 293.
 {¶ 10} "An easement is a right, without profit, created by grant or prescription, which the owner of one estate, called the dominant estate, may exercise in or over the estate of another, called the servient estate, for the benefit of the former." Trattar v. Rausch (1950),154 Ohio St. 286, paragraph one of the syllabus. An easement in or over the land of another may be acquired by specific grant, prescription, or implication from the particular set of facts and circumstances. Campbellv. Great Miami Aerie No. 2309, Fraternal Order of Eagles (1984),15 Ohio St.3d 79, 80; see Yeager v. Tuning (1908), 79 Ohio St. 121; Ciskiv. Wentworth (1930), 122 Ohio St. 487.
 {¶ 11} An implied easement is based upon the theory that whenever one conveys property, he or she includes in the conveyance whatever is necessary for its beneficial use and enjoyment and retains whatever is necessary for the use and enjoyment of the land retained. Trattar, at 291. Where an easement is grounded upon implication rather than express grant, the existence of such a right must be clearly established. Id. Implied easements are not favored because they are in derogation of the rule that written instruments speak for themselves. Id.; Ciski, supra. Plaintiffs claim they have an implied easement over Gregg's property based on necessity. Because the concepts of an implied easement by necessity and implied easement by prior use are often wrongly intermingled, we first distinguish the grounds necessary to prove each type of easement.
 {¶ 12} An implied easement by prior use arises when the following elements appear: "(1) A severance of the unity of ownership in an estate; (2) that, before the separation takes place, the use which gives rise to the easement shall have been so long continued and obvious or manifest as to show that it was meant to be permanent; (3) that the easement shall be reasonably necessary to the beneficial enjoyment of the land granted or retained; (4) that the servitude shall be continuous as distinguished from a temporary or occasional use only." Ciski, syllabus.
 {¶ 13} On the other hand, an easement by necessity may be implied from necessity alone. The necessity, however, does not in itself create an easement, but necessity implies circumstances that furnish evidence of the grantor's intention to convey an easement, and it therefore raises an implication of a grant. Trattar, at 293. The necessity that serves as the basis for an implied easement must exist upon the severance of ownership. See Trattar, at 292; see, also, Moore v. Lighthizer (Dec. 5, 2001), Muskingum App. No. 01-CA-8; Cyrus v. Melvin (Mar. 27, 1980), Lawrence App. No. 1409. Moreover, to justify the implication of an easement by necessity, strict necessity is required. Tiller v. Hinton
(1985), 19 Ohio St.3d 66, 69. An easement of necessity will not be implied where an alternative exists, even though the alternative is less convenient or more expensive. Id.
 {¶ 14} An easement by prior use and an easement by necessity are not mutually exclusive; rather, they are alternative means of achieving the same end. The elements of an easement by prior use indicate the grantor erroneously omitted an easement understood by the parties to be part of land conveyed to the grantee. A prior use easement looks retrospectively at how the land was used before it was severed in order to ascertain what beneficial use the grantor truly intended to convey. An easement by necessity, however, carries out the intent of the parties, as determined by a fair construction of the conveyance, on the theory that without an easement the grantee cannot make use of the land. Easement by necessity looks at how the land was configured immediately after its severance to ascertain whether the granted land was useable or accessible without a right understood to be necessary.
 {¶ 15} The subtleties that distinguish an easement by prior use and an easement by necessity have blurred over the years because the theories supporting their application are functionally equivalent: both seek to reform a grant of land to reflect the true intentions of the grantor. See, e.g., Meredith v. Frank (1897), 56 Ohio St. 479, 490 (noting "the law will not presume that it was the intention of the parties that one should convey land to the other in such manner that the grantee could derive no benefit from the conveyance"). In the end, although distinctions exist, both theories are simply a means of furnishing evidence of the grantor's intention to create an easement at the time the property was granted. Because the first two elements of an easement by prior use correspond to the elements of an easement by necessity, we address them together.
 {¶ 16} The first element is the severance of the unity of ownership in an estate. According to the evidence, Gregg's property, Lot 169, and plaintiffs' property, Lot 170, both belonged to the same owner until 1905. On September 19, 1905, Harriett Francis, then common owner of the two lots, severed the unity of ownership by selling Lot 170 to Mack Maxwell, plaintiffs' predecessor in title, and retaining title to Lot 169. The evidence thus demonstrates a unity of ownership of the estate before its severance.
 {¶ 17} The second element requires evidence that the prior use or necessity giving rise to the implied easement be apparent or manifest upon the separation of the land from the estate. The evidence undisputedly shows Lot 170, plaintiffs' property, was vacant when Francis severed and sold it to Maxwell in 1905. Maxwell did not complete construction of plaintiffs' house until 1906. With such evidence, the trial court correctly found that "[a]s no house had been built on lot 170 when the unity of ownership was severed, there was no pre-existing use from which an easement to enter upon lot 169 to maintain that house can be implied." (Decision, at 6.)
 {¶ 18} Although the trial court used the phrase "pre-existing use" instead of necessity, the logic for denying the existence of an easement by necessity is the same: because Lot 170 was vacant when the unity of ownership was severed, use of Lot 169 to maintain and repair a non-existent house on Lot 170 was not necessary. The need to maintain and repair the north side of plaintiffs' house did not arise until 1906, the year the house was constructed. As a result, plaintiffs are unable to prove the grantor, Francis, intended to convey an easement to maintain and repair the house on Lot 170 upon its severance from the common estate.
 {¶ 19} Moreover, to the extent plaintiffs contend Gregg failed to present evidence that Lot 170 was vacant upon its severance from Lot 169, and, thus, failed to shift the burden of producing evidence to them, their contentions are not persuasive. Gregg attached responses to interrogatories to his Memorandum in Support, and they demonstrate, albeit at a bare minimum, that Lot 170 was vacant upon its severance and plaintiffs' house was not completed until a year later. Such factual evidence, proper under Civ.R. 56(C), supports the trial court's conclusion that an implied easement by prior use or necessity does not exist.
 {¶ 20} Plaintiffs' second assignment of error, related to their fourth assignment of error, contends "[t]he trial court erred as a matter of law by requiring evidence of both prior use and strict necessity to find an easement by necessity." Plaintiffs correctly note the trial court commingled the two bases for proving an implied easement, but the error was harmless: under either easement by necessity or easement by prior use, plaintiffs' contentions fail because plaintiffs cannot demonstrate the prior use or necessity at the time the unity of ownership of the estate was severed. Because the house did not exist at that time, the trial court correctly concluded no easement existed, whether termed an easement by necessity or an easement by prior use.
 {¶ 21} Similarly, plaintiffs' first assignment of error contends the trial court erred in concluding plaintiffs used the claimed easement out of convenience. We understand plaintiffs' contention that their need for an easement is not a matter of convenience, but a matter of necessity. Plaintiffs, however, failed to submit evidence showing a necessity at the time the unity of ownership was severed. As a result, plaintiffs failed to demonstrate a genuine issue of material fact for trial concerning their claim that they have an implied easement by necessity. SeeTrattar, at 292-293.
 {¶ 22} Plaintiffs' third assignment of error contends the "trial court erred as a matter of law by weighing the circumstantial evidence of intent to convey an easement by necessity against an arbitrary evidentiary standard." Plaintiffs argue that although no direct evidence demonstrates that Francis intended to convey an easement to Maxwell, the historical facts and circumstances surrounding the grant provide a "rebuttable presumption that the privileges necessary to develop the lot as a residence and maintain the residence after it was built were intended by the parties as an incident of the grant." (Appellants' Brief, at 28.)
 {¶ 23} Specifically, plaintiffs contend Francis' conveyance of a vacant lot to a well-known builder who typically builds two and one-half story houses on the northern lot line of narrow properties in the neighborhood shows that Francis reasonably contemplated the need for an easement across her lot. Noting that a property owner could use the full width of a lot to build a new house in 1905, that construction of the house started a few weeks after the conveyance, that no building restriction was placed in the deed, and that the city code requires proper maintenance of the house, plaintiffs claim Francis intended to grant an easement incident to the grant of land.
 {¶ 24} Plaintiffs' contentions ignore that necessity is the circumstantial evidence of the grantor's intention to convey an easement, and that necessity must be present at the time the severance occurs. Plaintiffs concede that "if the necessity arose after the severance took place, it could not have been part of the intentions and expectations of the original parties at the time of the transaction." (Plaintiffs' Memorandum Contra Motion for Summary Judgment, at 7.) Even in the absence of an easement at the time of the severance, the land was fully useable and accessible in its granted form. As a result, plaintiffs are unable to show the grantor intended to create an easement at the time of the conveyance. Were a court to find necessity from circumstances that arose after the grantor severed the land, a landowner's property may become subject to an easement by necessity at any time and not as the result of the landowner's actions. Moore, supra.
 {¶ 25} Accordingly, plaintiffs' first, second, third and fourth assignments of error are overruled.
 {¶ 26} In their fifth, sixth, and seventh assignments of error, plaintiffs contend the trial court erred in not finding an easement by estoppel. For ease of discussion, we first address plaintiffs' sixth assignment of error, where plaintiffs contend the trial court erred in concluding plaintiffs did not present evidence of detrimental reliance on a reasonable belief of ongoing permissive use. Plaintiffs assert their reliance on Gregg's misrepresentations and silence induced them to purchase a house that, without the easement, is impaired. The trial court found plaintiffs were unable to establish the second element of an easement by estoppel because they decided to buy the house before they relied on any of Gregg's statements.
 {¶ 27} The Ohio Supreme Court has indicated only three ways to create an easement: by deed, by prescription, or by implication. See Yeager;Campbell, supra. Several Ohio courts, however, recognize the equitable remedy of estoppel to create an easement. Kamenar R.R. Salvage, Inc. v.Ohio Edison Co. (1992), 79 Ohio App.3d 685; Maloney v. Patterson
(1989), 63 Ohio App.3d 405; Monroe Bowling Lanes v. WoodsfieldLivestock Sales (1969), 17 Ohio App.2d 146; Waibel v. Schleppi (1945),77 Ohio App. 305.
 {¶ 28} According to these courts, an easement by estoppel may arise when an owner of land, without objection, permits another to expend money in reliance upon a supposed easement, when in justice and equity the former ought to have disclaimed his or her conflicting rights. Monroe,
paragraph two of the syllabus. An easement by estoppel may also exist in a boundary strip passageway partly on each owner's premises where adjoining landowners have enjoyed reciprocal use for a long period of time. Id. at 150. The party seeking to establish an equitable easement must show (1) a misrepresentation or fraudulent failure to speak, and (2) reasonable detrimental reliance. Maloney, at 410. Courts are generally reluctant, however, to find an easement by estoppel on the basis of passive acquiescence. Id.
 {¶ 29} Plaintiffs' affidavits explain they purchased their house in early September 2000. In mid-September 2000, a few days after plaintiffs moved in, Mrs. Arkes asked Gregg how to gain access to the north side of her house. At this point, but at no time before, Gregg represented that plaintiffs could enter his fenced yard to perform maintenance on their house. A few days later, Gregg showed Mr. Arkes how to open the gate. Even if Gregg's statements are construed to misrepresent the exact nature of the permitted use, the evidence also shows plaintiffs purchased their home before Gregg represented that they could use his property to perform maintenance. As a result, they did not detrimentally rely on his statements when they purchased their house.
 {¶ 30} Plaintiffs nonetheless contend Gregg's pre-purchase, positive report about their house and neighborhood, coupled with the configuration of Gregg's fence, led them to believe that permissive access to Gregg's property would be ongoing. In August 2000, before plaintiffs purchased their house, plaintiffs and Gregg had a 30-minute conversation about the neighborhood and plaintiffs' future house. Gregg represented that the neighborhood was quiet, relatively crime free, and improving in value. Plaintiffs asked Gregg whether he knew of anything that would affect the house's value. Gregg responded that he helped with the renovation both inside and out, but Gregg did "nothing to indicate that he believed he had the right to keep the owner of our house from coming onto his property to do maintenance on the house or that he regarded permissive access to his property as a personal favor." (Sylvia Arkes affidavit, at ¶ 6.) According to plaintiffs, their conversation with Gregg gave them a positive impression of the neighborhood and their house, and, as a result, the next day they made an offer on the house.
 {¶ 31} In addition to their conversation with Gregg, plaintiffs contend the configuration of Gregg's fence led them to believe they would be able to access Gregg's property to perform maintenance to the north side of their house. In particular, plaintiffs note that because Gregg's fence had two perpendicular extensions that enclosed the north side of their house, and two perpendicular extensions that enclosed the north side of their garage, they assumed previous owners of their house had used Gregg's gate to access the north side of their property. They viewed recently painted trim and new vinyl siding on the north side of their house as evidence supporting their assumption. Moreover, plaintiffs claim they relied on the fact that all the houses in the neighborhood were well-maintained despite having similarly configured privacy fences next door.
 {¶ 32} Although plaintiffs reasonably may have relied on the noted facts before they purchased their house, those facts, even when construed in plaintiffs' favor, do not demonstrate Gregg misrepresented the facts or failed to speak when he had a legal obligation to speak. Indeed, Gregg's only representation dealt with the house's condition, not the use of his property. Plaintiffs, therefore, cannot rely on the representation to create an easement.
 {¶ 33} Similarly, although Gregg was silent when plaintiffs asked whether he knew of anything that would affect the value of plaintiffs' house, his silence does not rise to the level needed to create an easement by estoppel. Only under certain circumstances does equity impose an obligation to speak, such as when the servient estate owner observes the claimant improving the servient estate. The duty does not arise when the servient estate owner stands by while the claimant improves his or her own property. See Marshall v. Rahrig (Apr. 24, 1996), Hardin App. No. 6-94-8. Here, the record reflects no equitable reason to impose a duty on Gregg to disclose the non-existence of an easement to the plaintiffs, especially when plaintiffs had access to information revealing that fact. See Maloney, at 410.
 {¶ 34} Moreover, plaintiffs cannot rely on the attendant circumstances surrounding Gregg's fence and the neighborhood to create an easement by estoppel. Gregg's fence extensions did not misrepresent the existence of an easement in favor of plaintiffs, but were constructed with the permission of plaintiffs' predecessors-in-interest. Despite the similarly situated, well-maintained houses in the neighborhood, Gregg did not represent or speak for the status of the neighborhood. Instead, plaintiffs made assumptions independently from Gregg's words and actions. Even when the evidence is construed in favor of plaintiffs, plaintiffs are unable to prove Gregg misrepresented or fraudulently failed to disclose the non-existence of an easement.
 {¶ 35} Plaintiffs further contend they reasonably relied on the continuous access granted to their predecessors-in-interest over a 23-year period. Gregg admits that, from the time he purchased his property in 1978 until October 2001, he allowed the owners of plaintiffs' property to access his property to perform maintenance to the north side of their house.
 {¶ 36} Although Ohio courts have held that an owner may be estopped from denying the existence of an easement that has been used over a long period of time, those courts granted the easement based on two equitable reasons not present here: (1) the reciprocal use of each other's or common property, and (2) one party's expenditure of money that improves upon a supposed easement located on the other's property. See Monroe, at 150.
 {¶ 37} Plaintiffs' evidence fails to show an easement by estoppel through reciprocal use over a long period of time. Although Gregg allowed plaintiffs and their predecessors to use his property to perform maintenance and repairs, the supposed easement is exclusively on Gregg's property, and the use is not reciprocal. Due to the limited space between Gregg's fence and the north side of plaintiffs' house, Gregg cannot physically place a ladder or scaffolding on plaintiffs' property to maintain the second story of his house. The first equitable reason to grant an easement, therefore, is not present here.
 {¶ 38} Similarly, plaintiffs' evidence fails to support an easement by estoppel through the expenditure of money in reliance upon a supposed easement, when in justice and equity the former ought to have disclaimed his conflicting rights. See Monroe, at 151. Plaintiffs suggest that, since they relied on the easement to conduct a major renovation on the north side of their house, equity warrants the creation of an easement. An easement, however, is created when a party, believing he possesses an interest in the real property, expends money upon the real property where the easement is thought to exist. If we apply the principle to the instant case, plaintiffs must show they expended money upon the portion of Gregg's property claimed to be an easement while Gregg acquiesced or, at the least, did not stop them. Here, plaintiffs and their predecessors-in-interest did not spend money to improve Gregg's property, the alleged servient estate, but spent money to improve their own estate, the dominant estate.
 {¶ 39} As a result, even if plaintiffs detrimentally relied on a long-standing permissive use, the absence of the two necessary equitable considerations does not warrant the creation of an easement by estoppel. Accordingly, plaintiffs' sixth assignment of error is overruled.
 {¶ 40} Plaintiffs' fifth and seventh assignments of error are interrelated and address the circumstances that bind a landowner with an easement created by his predecessor-in-interest. Plaintiffs' fifth assignment of error contends "[t]he trial court erred as a matter of law by deciding that an easement by estoppel may not pass through the chain of title." Plaintiffs' seventh assignment of error contends "[t]he trial court erred as a matter of law in deciding that [Gregg] had no notice of an easement when he purchased his property."
 {¶ 41} In these assignments of error, plaintiffs do not argue the easement originated from Gregg's representations; rather, they contend the easement arose from a representation Francis made when she granted the lot to Maxwell. Although plaintiffs' argument is improperly raised for the first time on appeal, we nevertheless address plaintiffs' contention that, since Francis passively acquiesced while Maxwell built plaintiffs' house near the common lot line, she, and her successors in title, should be equitably estopped from denying the existence of an easement.
 {¶ 42} Plaintiffs' contention reargues one of their prior assertions in slightly different terms. As noted, equity will grant an easement through silence or passive acquiescence only when justice imposes a duty on the silent party to declare his conflicting rights, such as when a servient estate owner observes the claimant improving or expending money on the servient estate. The duty, however, does not arise when the servient estate owner stands by while the claimant improves his own property. Here, Maxwell built plaintiffs' house near the lot line but within his premises. Since no deed restrictions prevented that placement, and since the house was built on the claimant's own property, Francis had no duty to disclose her rights. Moreover, since Maxwell knew the true nature of his and Francis' rights, he had no right to require Francis to declare her conflicting interest before he expended money. Because plaintiffs failed to prove an easement by estoppel, notice of a non-existent easement is irrelevant. Accordingly, plaintiffs' fifth and seventh assignments of error are overruled.
 {¶ 43} In addition to granting summary judgment to Gregg on plaintiffs' easement claim, the trial court entered judgment for Gregg on plaintiffs' nuisance claim and prayer for injunctive relief. A private nuisance involves the interference with the use and enjoyment of an individual's land. Cincinnati v. Beretta U.S.A. Corp., 95 Ohio St.3d 416,2002-Ohio-2480, at ¶ 8. Two varieties of private nuisance exist in the law, an absolute nuisance and a qualified nuisance. "An absolute nuisance is based on either intentional conduct or an abnormally dangerous condition that cannot be maintained without injury to property, no matter what care is taken. A qualified nuisance is essentially a tort of negligent maintenance of a condition that creates an unreasonable risk of harm, ultimately resulting in injury." State ex rel. R.T.G., Inc. v.State (2002), 98 Ohio St.3d 1, 13.
 {¶ 44} Plaintiffs' nuisance claim is predicated upon their easement claim. The claimed nuisance is the placement of Gregg's fence in the alleged easement. The trial court ruled that Gregg's fence cannot interfere with plaintiffs' use and enjoyment of a non-existent easement.
 {¶ 45} Plaintiffs' eighth assignment of error contends the trial court erred when it granted summary judgment solely because plaintiffs were determined not to have an easement. Plaintiffs maintain Gregg's fence is a nuisance because it is an unreasonable use of Gregg's property in light of plaintiffs' need to comply with the maintenance standards of the Columbus City Code. Although the city code requires certain standards be met, it does not give a landowner the right to access an adjoining landowner's property. Since Gregg's fence is located exclusively within his own property, and plaintiffs have no other property or personal right to access Gregg's property, plaintiffs are alleging an interference to a right they do not possess. Gregg's fence, therefore, does not injure plaintiffs' legal or property rights and is not a nuisance. See Letts v.Kessler (1896), 54 Ohio St. 73. Plaintiffs' eighth assignment of error is overruled.
 {¶ 46} Lastly, plaintiffs' ninth assignment of error contends "[t]he trial court erred as a matter of law by denying equitable relief after finding there was no legal basis for declaring an easement." Two parts of plaintiffs' prayer for injunctive relief are predicated on the trial court's declaring the existence of an easement; the other two parts are predicated on counts plaintiffs dismissed. Since the trial court correctly found that an easement does not exist, the court was correct in finding no basis to order Gregg not to interfere with plaintiffs' right to use a non-existent easement. Plaintiffs' ninth assignment of error is overruled.
 {¶ 47} Having overruled all of plaintiffs' assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
Petree and Sadler, JJ., concur.